ABERTHAW CONSTRUCTION COMPANY *vs.* C. W. CAMERON
& others.

Suffolk.    December 3, 1906. — February 27, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Unlawful Interference. Equity Jurisdiction,* To enjoin conspiracy. *Conspiracy. Labor Union. Corporation. Equity Pleading and Practice,* Decree.

A corporation may be enjoined from conspiring with others to interfere unlawfully with the performance of a contract and may be held liable in damages for such interference in the same way and to the same extent that a natural person may be.

In a suit in equity by a contractor to enjoin the officers and members of a labor union from conspiring to compel the plaintiff, by threats of causing a strike of his employees, to employ only union men in certain work constituting part

of the construction of a church under a contract between the plaintiff and a corporation, called a board of directors, which was one of the defendants, and for the assessment of damages caused by the illegal acts of the defendants, it appeared that the defendants other than the corporation conspired in the manner charged in the bill before they were aided by the defendant corporation, that this defendant was informed by one of the other defendants that a general strike was proposed if the plaintiff continued to employ a certain non-union workman, that the members of the board, which constituted the defendant corporation, had an interview with the plaintiff in which they requested him either to discharge the non-union workman or to procure employment for him elsewhere or to permit them to do so, and that they did this to avoid a general strike which they deemed probable if the workman was permitted to remain and which if it occurred would delay the completion of the church, that about a week later the defendant corporation voted to request the plaintiff to cease work as it had decided to finish the building in another way, and communicated this vote to the plaintiff, and that the plaintiff was ejected from the church and prevented from continuing the performance of his contract. *Held*, that the vote of the defendant corporation and its communication to the plaintiff, followed by the breaking of the contract, warranted a finding that the defendant corporation participated in an unlawful conspiracy to compel the plaintiff to employ only union workmen, and that in pursuance of such conspiracy the defendants caused a breach of the contract between the plaintiff and the defendant corporation without any just cause or lawful provocation; but that a finding was warranted that the defendant corporation did not participate in such conspiracy by the previous interview of the members of the board with the plaintiff, which was advisory only and was not intended to aid in the coercive measures or active interference adopted by the other defendants.

In a suit by a contractor to enjoin the officers and members of a labor union from conspiring to compel the plaintiff, by threats of causing a strike of his employees, to employ only union men in certain work constituting part of the construction of a building under a contract between the plaintiff and the owner of the building and for the assessment of damages caused by interference with the plaintiff's performance of his contract, a temporary injunction issued and thereupon the plaintiff completed his contract before the case was ripe for a final decree. The case came before a single justice upon a master's report which was founded upon the plaintiff's bill and dealt only with the unlawful acts of the defendants in connection with the contract described in the bill. The master found for the plaintiff and the single justice ordered that the master's report be confirmed. The plaintiff in applying for a final decree asked for a permanent injunction restraining the defendants from any interference in the future in case the plaintiff in the performance of other contracts should employ non-union workmen. The justice ruled that the injunction should apply only to the contract set forth in the bill, which had been completed by the plaintiff, and to no other work. He reported the case to the full court, stating in his report that all questions of pleading were waived, and also stating that such decree was to be entered on the master's report as law and justice required. *Held*, that the ruling confining the decree to the issues heard and passed upon by the master and the single justice was correct.

BILL IN EQUITY, filed in the Supreme Judicial Court on February 23, and amended on February 28 and March 3, 1906, by a

corporation, organized under the laws of the State of Maine and having its usual place of business in Boston, against the business agent, the president, the vice-president, the secretary and the treasurer of the Carpenters District Council of Boston and Vicinity, a voluntary association, and against the same persons individually and as members of that association, and against the members of a committee of that association, against certain other persons individually and as officers of another voluntary association known as the Building Trades Council, against the Christian Science Board of Directors, "a corporation duly organized according to law, of said Boston," and against the secretary and two other members of that corporation individually and as agents of the corporation, to enjoin the defendants other than the defendant corporation from inducing that defendant to break its contract with the plaintiff under which the plaintiff had agreed to construct and to complete by March 12, 1906, a concrete floor in the auditorium and corridors of a structure known as the First Church of Christ, Scientist, on Falmouth Street in Boston, to enjoin the defendant corporation from breaking such contract, and to enjoin all the defendants from interfering by threats, intimidation or coercion with any of the persons employed by the plaintiff and from combining and conspiring to compel the plaintiff in the prosecution of its business to employ only members of the Carpenters District Council or of any other union and to discharge any persons in its employ who were not members of such union or of any other labor union, praying for a temporary and a permanent injunction and for an assessment of damages.

The case was referred to Wade Keyes, Esquire, as master. He filed a report in which he found for the plaintiff. Later the case was heard upon the master's report and the defendants' exceptions thereto by *Sheldon,* J., who overruled all the exceptions except one, which is described below, and reported the case for determination by the full court as follows:

"This case came on for hearing upon the filing of the master's report and the exceptions of the defendants thereto. I overruled all the exceptions except the second exception of the defendant Christian Science Board of Directors.

"The plaintiff contended that the defendant Christian Science

Board of Directors became a co-conspirator with the other defendants from the time when they first sought to induce the plaintiff to discharge the workman Stark.   Against the plaintiff's objection I ruled that the Christian Science Board of Directors became co-conspirators only on its overt act in breaking its contract with the plaintiff on Wednesday, February 21, 1906, and therefore sustained the second exception so far as the same applies to the item of $15.12, cost of reinstating work destroyed, and $3.13, cost of advertising in the public press, said items of damage having accrued before said breach of contract. Thus modified I ordered the master's report to be confirmed.

" The plaintiff asked for a permanent injunction in the following form:

" ' That the following respondents named in said bill, to wit, the Carpenters District Council of Boston and Vicinity, and each and every member thereof, C. W. Cameron, W. D. McIntosh, S. F. McArthur, H. M. Taylor, J. E. Potts, J. F. Medland, John McLeod, and Patrick Slow, individually and as officers and agents of said Carpenters District Council, and the Christian Science Board of Directors, and the servants, agents, confederates and attorneys of each of the foregoing persons, associations and corporations, and all others who may act in concert with them or by their direction, be, and they hereby are, perpetually restrained and enjoined from combining and conspiring to compel said complainant in the prosecution of its business to employ members of said Carpenters District Council or of any other labor organization so called, and to refrain from employing any person or persons who may be non-union men so called; and said respondents, their servants, agents, confederates and attorneys are further enjoined and restrained, for the purpose of compelling the complainant to employ exclusively in the transaction of its work and business members of said Carpenters District Council or of any other labor union, from breaking or combining or conspiring to break, or causing to be broken, any contract or contracts which the complainant may now or hereafter have, either with any of the defendants herein or with any other person or corporation whatsoever; and for said purpose from directly or indirectly calling or combining or conspiring to call or cause a strike of workmen or a cessation of work by

workmen now employed or hereafter to be employed by the complainant in the transaction of its business, and for such purpose from interfering by threats, intimidation, or coercion, or any other obstructive action, with any of the persons now employed or whom said complainant may hereafter seek to employ in the transaction of its business, and for said purpose from combining and conspiring to interfere with the said complainant in the practice and prosecution of its occupation and business, and to prevent or obstruct it from obtaining further contracts therefor and employment therein, or from securing the services of workmen to carry out such contracts.'

" The defendants other than the Christian Science Board of Directors objected to any injunction which should apply to any part of the plaintiff's business except the particular work being done by the plaintiff under contract with the defendant Christian Science Board of Directors, which work was completed on March 12, 1906. Against the plaintiff's objection I ruled that the injunction should apply only to said work, and not to other work.

" No question is made that the bill as to the defendants William B. Johnson, Charles Brigham, Charles C. Coveney, John Doe and Richard Roe, and the Building Trades Council should be dismissed without costs.

" All questions of pleading are waived.

" At the request of the plaintiff I report the case to the full court, such decrees to be entered as, on the master's report, law and justice require."

*G. W. Anderson,* (*E. H. Ruby* with him,) for the plaintiff.

*F. W. Mansfield,* for the defendants other than the Christian Science Board of Directors.

BRALEY, J. The plaintiff's bill prays for injunctive relief, and the assessment of damages against the defendants who are alleged to have formed a conspiracy to compel it under penalty of a general strike of its employees to hire only union workmen in the erection of a large building then in process of construction under its contract with the Christian Science Board of Directors, one of the defendants. Upon the principal question, the master to whom the case was referred found in favor of the plaintiff, and his report was confirmed except as to the time when this

defendant became a party to the conspiracy.   By the modification of the single justice it was held that it did not unlawfully participate until February 21, 1906, when the board voted to request the plaintiff to cease work as they had decided to finish the building in another way.   The master not only finds that this action was taken and communicated to the plaintiff, who refused compliance, but that on February 15, 1906, after having been informed by the defendant Cameron that a general strike was proposed if the plaintiff continued to employ one Stark, who did not belong to either of the unions, the members of the board had an interview with the plaintiff.   In this interview they requested the plaintiff either to discharge Stark, or procure employment for him elsewhere, or permit them to do so, and this action is found to have been taken to avoid a general strike which they believed probable if he was permitted to remain. By the pleadings and in the report this defendant is described as a corporation known as the Christian Science Board of Directors, and there is no statement or finding that this body was representative rather than original, or that the authority of the board if treated as the corporation itself was limited by any by-law or vote.   The conspiracy charged and proved was a combination to coerce the plaintiff to accede to the demands of Cameron and the organizations named as defendants, in which this defendant joined.   Being a body corporate gave it no immunity from the consequences, for which it could be held liable as if it had been a natural person.   *White* v. *Apsley Rubber Co.* 194 Mass. 97, and cases cited.   *Buffalo Lubricating Oil Co.* v. *Standard Oil Co.* 106 N. Y. 669.   But while in a conspiracy at common law an overt act need neither be alleged nor proved, as the offence consists in the unlawful combination, there must be a mutual understanding whereby all the conspirators work together for a common end.   *Commonwealth* v. *Hunt*, 4 Met. 111.   *Commonwealth* v. *Eastman*, 1 Cush. 189, 224.   *Revere Water Co.* v. *Winthrop*, 192 Mass. 455.   The plans of the other defendants were well on foot when this defendant who had been informed of their object intervened, and sought by its representations to persuade the plaintiff to avoid all future difficulty, by discharging an employee who had not become obnoxious to the corporation, except by reason of its pecuniary interest that there should be no

unreasonable delay in the completion of its church.   The master did not report the evidence, and the usual rule applies.   But beyond this special finding he made no further finding as to the conduct of the members of the board before the vote was taken. It is plain that the interview with the accompanying proposals was advisory only and not intended to re-enforce or aid in the coercive measures adopted by the unions and their representatives, or to form a part of the measures of active interference which the other defendants were taking to enforce their demand. The ruling that the proposals made at this conference did not make them co-conspirators by participation therefore must be sustained.

In the general scheme of the conspiracy the breaking of the contract * which subsequently followed was an important element, and when taken in connection with the action of the other bodies of which the board had knowledge, the concluding finding that the defendants against whom this bill is prosecuted " conspired together to compel the plaintiff to employ only union carpenters " and " that in pursuance of such conspiracy they caused a breach of the existing contract of employment between the plaintiff and the defendant board, without any just cause or lawful provocation " was well warranted.   *Walker* v. *Cronin*, 107 Mass. 555.   *South Wales Miners' Federation* v. *Glamorgan Coal Co.* [1905] A. C. 239, 250, 253.

The remaining question relates to the form and scope of the decree.   An interlocutory injunction having issued under the first prayer of the bill, the plaintiff fully performed its contract,

---

* The vote of the defendant corporation was communicated to the plaintiff in a letter from the architect of the corporation, found by the master to have been its agent for the purpose.   This letter contained the following sentence : " I am instructed by the Directors of the First Church of Christ, Scientist, to inform you that it is their wish that you retire immediately from the work at the First Church of Christ, Scientist.   It has been decided by them to do the remainder of the work included in your contract in a different manner, commencing at one o'clock today."

About twelve o'clock on the same day the agent of the defendant corporation ordered the plaintiff to leave the job, and, upon its refusal to do so, this agent called the watchman employed by the directors to police the building, who forcibly, but without actual physical violence, ejected the foreman of the plaintiff from the job and escorted him to the street, and the men employed by the plaintiff followed.

completing the work more than two months before the case appears to have been ripe for the entry of a final decree. The plaintiff is not content with a decree in which relief is confined to the unlawful acts of the defendants in connection with the contract described in its bill, but asks for a permanent injunction restraining the unions and their officers from any interference in the future if the plaintiff in the performance of other contracts chooses to employ non-union workmen. To this proposition the answer is plain. By the terms of the report under which the case is before us while it is stated that all questions of pleading are waived, it is also stated, that such decrees are to be entered on the master's report as law and justice require. The master's report rests upon the frame of the bill with which it must be considered, not only for the purpose of the modification, but as to the extent of the relief to which the plaintiff is entitled. This issue was not presented by the pleadings, and consequently it neither has been heard and determined by the master nor by the single justice. If the pleadings are disregarded it would be equally extraordinary to enter such a decree upon the report of a master to whom this question was not referred, and upon which he has not passed. The conspiracy in which the defendants are found to have participated was an unjustifiable wrong causing temporary damage. *Martell* v. *White,* 185 Mass. 255. But while unlawful conduct has been proved in the present case, this fact raises no presumption that in the future the defendants will engage in similar wrongful acts. *Hatch* v. *Bayley,* 12 Cush. 27, 30. *Phelps* v. *Cutler,* 4 Gray, 137. *Stewart* v. *Thomas,* 15 Gray, 171. *Baldwin* v. *Parker,* 99 Mass. 79. *Kline* v. *Baker,* 106 Mass. 61. And if such a combination exists it must be pleaded and proved before appropriate relief can be granted. See *Plant* v. *Woods,* 176 Mass. 492, 496, 497 ; *Reynolds* v. *Everett,* 144 N. Y. 189. The plaintiff is entitled to a decree with costs confirming the master's report as modified, awarding execution for the damages assessed less the diminution thus caused, and the injunction heretofore issued may be made perpetual if it desires.

*Ordered accordingly.*