EDWARD T. REYNOLDS & others *vs.* GEORGE H. E. DAVIS & others.

· Essex.    March 13, 1907. — April 3, 1908.

Present : KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Unlawful Interference. Labor Union. Strike. Equity Pleading and Practice,* Parties.

The legality of a combination not to work for an employer, made by persons who are not under contract to work for him, depends on the purpose for which the combination is formed.

A combination not to work for an employer, made by persons who are under contract to work for him in violation of that contract, is necessarily an unlawful interference with the employer's business.

Whether a combination not to work for an employer, made by persons who are not under contract to work for him, for the reason that the employer has posted " open shop rules " declaring, among other things, that " there shall be no discrimination for or against any workman on account of membership or non-membership in any organization," which is a strike against working under those rules and to compel a return to carrying on the shop under a previously existing arrangement with a trades union, is an illegal interference with the employer's

business, depends on the character of the arrangement which it is the purpose of the strike to re-establish.

A combination not to work for an employer, made by persons who are not under contract to work for him, for the purpose of forcing the employer to submit to a delegate body of employees all questions between him and his individual employees, is an unlawful interference with the employer's business. KNOWLTON, C. J., dissenting on the ground that the rules and by-laws, which were held by the majority of the court to show the purpose above stated, merely provided a proper method of preliminary investigation.

The rules of a trades council, which was an unincorporated association made up of delegates from the local trade unions with which it was affiliated, provided that every grievance which a member of a local union had against his employer was to be investigated by the executive committee of the council, that, if the employer did not comply with the decision of the executive board he should be reported to the council as "unfair," and that, upon his being declared "unfair" by the council, the executive board again should "interview" the employer, and, if he continued in his refusal to comply with the demands of the council, the board should "at once remove all union men" from his employ and no union man should "be allowed to go to work" for him until he should be "again placed upon the fair list by the . . . council." *Held*, that by these rules the members of the association undertook to decide each case of an individual grievance between a single employee and his employer, and that a strike for the purpose of imposing the adoption of these rules upon an employer against his will should be enjoined as an unlawful interference with his business. KNOWLTON, C. J., dissenting.

A strike, to force employers to comply with the decision of a delegate body of employees as to whether a single employee is or is not to work for his employer, is in the nature of a sympathetic strike and will be restrained by injunction. KNOWLTON, C. J., dissenting.

In case of a strike which is an unlawful interference with the business of an employer, such employer is entitled to an injunction restraining the strikers from doing any acts whatever, peaceful or otherwise, in furtherance of their unlawful combination, including the payment of strike benefits and putting the employer on an "unfair" list.

A trade union and a trades council, which are unincorporated associations, cannot be made parties to a suit in equity.

Where it is desired to make the members of an unincorporated association defendants in a suit in equity, this cannot be done by an allegation in the bill that John Doe and Richard Roe and sundry persons, whose names and whose residences or places of business are unknown to the plaintiffs, are the members of the association.

Where it is desired to make the members of an unincorporated association defendants in a suit in equity, and the persons desired as defendants are members of a class who have a common interest and are too numerous to be made parties individually, even if their names are known to the plaintiff, the proper way to bring them before the court is to join as defendants persons who are proper representatives of the class, describing the class to which they belong and alleging them to be proper representatives of it, stating that the members are too numerous to be joined individually as defendants.

LORING, J.   This is a bill brought apparently by the members of nine firms and thirty-five individuals, and purports to

be brought against seven unincorporated associations (a· building trades council and six local trade unions) and twenty-eight individuals. The relief sought is an injunction restraining the defendants from interfering with the business respectively carried on by the several plaintiffs. The place of business of each and all the plaintiffs and defendants is in the city of Lynn.

The case was sent to a master and came on for hearing in the Superior Court on the master's report to which no exceptions had been taken. A final decree was entered directing that the bill be dismissed as to three of the plaintiffs named on a motion to that effect made by them, and as to one defendant on the merits, and restraining the remaining defendants in certain particulars therein set forth. From this decree the defendants who were enjoined took an appeal which is now before. us.

The principal contention of the defendants is that on the facts set forth in the master's report the bill should have been dismissed.

It appears from the master's report that before May 1, 1906, " although some of them [the plaintiffs] had been running what was practically an ' open shop,' yet many of the complainants had at least some sort of verbal understanding, if not an actual agreement, with the various unions respecting hours, wages, apprentices, and the employment of non-union help, which would expire on that date."

At some time not fixed by the master the plaintiffs (with the exception of Keyes, Eastman and Swan), acting with others, signed and issued the following advertisement which was headed "Lynn Open Shops ":

" The following firms propose in the future to do a free and unrestricted business under the following Open Shop Rules, which will enable us to pay our employees according to their merits, and insure to the public a fair and honest return for their money, which cannot be done under the Closed Shop.

" Open Shop Rules.

" 1. There shall be no discrimination for or against any workman on account of membership or non-membership in any organization.

" 2. There shall be no restriction as to the number of appren-

tices to be employed when of proper age, or as to the nature of the work which workmen of any class shall do.

" 3. That eight (8) hours shall constitute a day's work.

" 4. Overtime shall not be permitted except when absolutely necessary, and under no circumstances to be continued, all overtime to be paid for as regular time. Sundays and Legal Holidays, or the days on which the same are celebrated, are to be paid for as double time.

" 5. Grievances arising among the workmen will be settled in conference between the employer and the workmen already involved."

This advertisement was signed by twenty-nine master carpenters and builders, eight master painters and paper hangers, one machinist and millwright, six plumbers, steamfitters and tinsmiths, four stairbuilders and dealers in building supplies, one dealer in lumber and " builders' finish," and three carrying on the business of " Gas and Electrical Construction."

The six trade unions named as defendants are unions of (1) carpenters, (2) lathers, (3) painters, decorators and paperhangers, (4) plumbers, (5) sheet metal workers, and (6) steam fitters and helpers.

On May 1, 1906, these " Open Shop Rules " were posted by the plaintiffs in their several shops, and thereupon the union men members of the unions named as defendants left work with " some " exceptions; in these instances the union men " remained at work after the open shop rules were posted and until a nonunion man was put at work on the same job with themselves, when they immediately left. In one or two cases the union men returned when the non-union men ceased working."

Without going into details it is manifest that the strike here in question was a strike against the open shop, as the plaintiffs proposed to carry on an open shop, and for the closed shop as it had previously been carried on by many of the plaintiffs and by the defendants.

It is settled in this Commonwealth that the legality of a combination not to work for an employer, that is to say, of a strike, depends (in case the strikers are not under contract to work for him) upon the purpose for which the combination is formed, — the purpose for which the employees strike.

We have excluded all cases where the employees are under contract to work for their employer, because it is now settled in this Commonwealth at least that competition and similar defenses are not a justification for inducing an employee or other person to commit a breach of a contract and thereby interfering with the business of the employer. *Beekman* v. *Marsters,* 195 Mass. 205. From that it would seem to follow necessarily that, in case of persons under a contract to work, a strike or combination not to work, in violation of that contract, to secure something not due to them under that contract, would be a combination interfering without justification with the employer's business. See in this connection *Aberthaw Construction Co.* v. *Cameron,* 194 Mass. 208.

Instances of strikes where the purpose sought to be obtained by the strike has been held to make the combination not to work an illegal one, are to be found in *Carew* v. *Rutherford,* 106 Mass. 1; *Plant* v. *Woods,* 176 Mass. 492; *Pickett* v. *Walsh,* 192 Mass. 572; *Aberthaw Construction Co.* v. *Cameron,* 194 Mass. 208.

What, then, on the facts found in the master's report was the purpose of the strike here in question?

The question of the purpose of the strike does not seem to have been directly in the master's mind in framing his report, and for that reason his findings of fact are not directed to this issue. But in our opinion the facts were abundantly proved which made the strike here in question an illegal combination, that is to say, an interference with the business which each plaintiff was conducting, for which interference there was not a justification.

The occasion of the strike, as we have said, was the posting of the open shop rules. The strike was manifestly a strike against working under those rules. To understand the significance of the defendants' combination not to work under these open shop rules it is necessary to state what was proved to have been the condition under which many of the plaintiffs had been conducting their business before these rules were posted.

Most of the plaintiffs had been conducting their business under an oral understanding, if not an actual agreement, with the defendant local unions.

It appears that the defendant local unions were affiliated with the Building Trades Council of Lynn and Vicinity, also named as a party defendant. The Building Trades Council of Lynn and Vicinity appears to be an unincorporated association made up of delegates from the local unions with which it is " affiliated," including the six local unions named here as defendants.

By the working and trade rules of this council every grievance which a member of a local union affiliated with the council has against his employer is to be investigated by the executive board of the council, and if the employer does not comply with the decision of the executive board he is reported to the council as " unfair," and upon being declared " unfair " by the council the executive board is " to again interview " the employer and if the employer continues in his refusal to comply with the demands of the council the board " shall at once remove all union men " from his employ, and " no union man shall be allowed to go to work " for him until he is "again placed upon the fair list by the . . . council."

In other words, the members of the defendant unions, by the terms of their own rules undertook to decide each case of an individual grievance between a single employee and his employer, to decide what should be done by the employer as well as by the employee, and to enforce compliance with its decision by threatening and instituting a strike in which all members were bound to join. What we mean by an individual grievance is (for example) the discharge by his employer of a member of the union for drunkenness or inefficiency.

This statement of the make up of the defendant unions and the Trades Council with which they are affiliated makes plain what the plaintiffs were aiming at in the open shop rules. And it also makes plain what was the main or one of the main purposes for which the strike in question was instituted by the individual defendants.

The strike in question was a combination for the purpose of making the Trades Council, composed of delegates from the unions of which the individual defendants are members, the arbiter of all questions between individual employees and their employers.

It purports to include questions arising under contracts still

in existence between the two.    To force the employer to submit to a delegate body of employees his rights under an existing contract by a combination for that purpose is not a justifiable interference with their employer's business.

And in cases arising outside existing contracts it is an attempt to force compliance on the part of employers with the decision of this delegate body of employees as to whether a single employee is or is not to work for the employer, which decision is to be enforced by a strike.    Such a strike would be a strike in the nature of a sympathetic strike, that is to say, it is a strike not to forward the common interests of the strikers but to forward the interests of an individual employee in respect to a grievance between him and his employer where no contract of employment exists.

We do not mean to say that a labor union cannot combine to support a committee to take up individual grievances in behalf of the several members.    What we now decide to be illegal is a combination that such grievances (that is to say, grievances between an individual member of a union and his employer which are not common to the union members as a class) shall be decided by the employees and that decision enforced by a strike on the part of all.    In this respect this case comes within the principle upon which the second point in *Pickett* v. *Walsh,* 192 Mass. 572, was decided.    See p. 587, *et seq.*

It follows that the plaintiffs were entitled to an injunction restraining the defendants from combining together to further the strike in question, and from doing any acts whatever, peaceful or otherwise, in furtherance thereof, including the payment of strike benefits and putting the plaintiffs on an unfair list.

The Building Trades Council and the six unions were not properly joined as parties defendant as unincorporated associations, *Pickett* v. *Walsh,* 192 Mass. 572, and they should be stricken from the title of the cause.    The pleader seems to have thought that the reason why all the members of these unincorporated associations need not be joined as defendants is because their names " are to your complainants unknown," and he has undertaken to make them parties by an allegation " that John Doe and Richard Roe and sundry other persons whose names and whose several residences or places of business are to your complainants unknown, are the remaining members of said

respondent unions and the respondent Building Trades Council, and are participants in the unlawful acts hereinafter set forth." The rule of equity pleading which dispenses with the joinder of all members of an unincorporated association depends upon their being members of a class who have a common interest and are too numerous to be made individually parties defendant even if their names are known to the plaintiff. The proper way of bringing them before the court is to join as parties defendant persons who are alleged to be and are proper representatives of the class, describing the class to which the members belong and stating that the members are too numerous to be joined as parties defendant. See *Pickett* v. *Walsh*, 192 Mass. 572.

No objection has been made to the joinder as parties plaintiff in this suit of the nine firms and thirty-five individuals, each carrying on a separate business.

It is manifest that the decree entered is not so sweeping as that to which the plaintiffs were entitled. No appeal however was taken by the plaintiffs, and of this the defendants do not complain.

But the bill must be amended as to the parties defendant. Upon the bill being amended within sixty days, the decree may be modified as hereinbefore set forth, and on being so modified, affirmed. Otherwise the entry must be bill dismissed.

*So ordered.*

KNOWLTON, C. J. The opinion agreed to by a majority of the court in this case, seems to me erroneous in the grounds on. which it purports to rest, and, if it should pass without comment, it would be, in my judgment, misleading. To most of the doctrines stated in it I heartily agree. With the final disposition of the case I am satisfied. If the decision were put on the ground that the strike was for a closed shop in the sense that the shop should be closed arbitrarily to all workmen not members of the union, not because such workmen were personally objectionable in any particular, nor because there was not work enough for all the members of the union if non-union men were employed, but to compel all workmen to join the union for the purpose of creating a monopoly in the labor market, whereby to be able to contend successfully with employers whenever a con-

troversy should arise, I should cheerfully concur in it.  A strike
to compel a closed shop, merely to accomplish such a purpose,
would not be justifiable on principles of competition, either as
against non-union workmen or as against the employer, but
would be unlawful for reasons stated in *Berry* v. *Donovan,* 188
Mass. 353, *Plant* v. *Woods,* 176 Mass. 492, and *Pickett* v. *Walsh,*
192 Mass. 572.

This opinion enters a field which has not been very much
traversed by the courts.  It holds this strike unlawful because
of the rules and by-laws of the labor union.  Rules and by-
laws of labor unions have not commonly received the animad-
version of the courts, because, as regulations for the internal
administration of the affairs of organizations established for a
lawful purpose, they are usually designed, in a reasonable way,
to promote the objects of the organization.

It is held universally in law, and is conceded generally in
public opinion, that a labor union, established for the promotion
of the interests of its members in a reasonable way, is a justifi-
able and commendable organization.

It is right that all the members of such a union should unite
for the protection of the interests of every individual member.
If the feeblest of its members has a just grievance as an employee
against their common employer, it is proper that the whole com-
bination should act together to obtain redress of the wrong.
The most effectual way of enforcing the right of every member
to just treatment from his employer, in reference to wages, hours
of labor and other things affecting his interests, is by withhold-
ing the labor of the union until justice is done.  To make this
a potent inducement the union must be able to act as one body,
and to hold every member to the performance of his duties to his
fellow members, so that all may be a united force.  Of course
there must be a method of determining what action, if any, shall
be taken by the union in any case of an alleged grievance.  Such
a determination cannot properly be made without an investiga-
tion of the facts.  Such an investigation ordinarily would involve
conferences with the employer, and negotiations to see whether
he would consent to an improvement of the conditions, if they
should appear to be unjust to the employee.  Such conferences
and negotiations, without which ordinarily no labor union would

be justified in striking, call for a representative or representatives of the union to present its side of the controversy to the employer, and to act for the union in the maintenance of its interests against the opposite party. In such cases the employer and employee often come together as adverse parties, each contending for that which seems for his advantage. The final determination of the position to be taken by the union may be by a vote of its members. It may be by the action of a board of officers to whom the union intrusts this duty. In favor of the latter method is the fact that, in times of excitement, assemblies of men and women often act hastily under a misapprehension of the facts, and under an impulse of passion aroused by inflammatory appeals to their feelings. But, in one way or another, such determinations must be made, and must be treated as finally settling the position which the union is to take for itself, as a party dealing with an adverse party in reference to its supposed rights. Of course, if the employer takes a different view, neither is bound by the action of the other, and each may make any lawful effort to prevail in the contest with the other.

In the opinion the present strike is condemned because of the rules which govern the union. Under these, every grievance is to be investigated by the executive board of the council. Surely this is right and proper. If the employer refuses to do that which the executive board thinks he ought to do, the facts are reported by the board to the next meeting of the building trades council, with a recommendation that he be declared unfair. If he is then declared unfair by the building trades council, that is equivalent to a decision that he is in the wrong. It is then the duty of the executive board to again interview the employer, and if he fails to comply with the conditions that the building trades council deems just, a strike is to be declared and maintained by the union until he complies with these conditions.

It is to be noticed that this course of proceeding is entirely for the guidance of the members of the union. The employer takes such measures and acts upon such principles as he chooses for his own guidance. If the result is a failure to agree, then each stands upon his rights, and it is a question which can force the other to yield, or how they can afterwards reach a compromise. The trades council is no more the arbiter of questions between

individual employees and their employers than the employer is. The trades council, as a representative official board, decides for one party and determines its action, and the employer decides for the other party and determines his action. Neither assumes to determine anything for the other, but the action of each is governed by his or its own determination.

I do not see how any rule can be more just and proper for the guidance of a labor union when a dispute arises between its members, or any one of its members, and the employer. Suppose the case is a reduction of wages by the employer which the members of the union deem unjust. What more fair or equitable method of dealing with such a supposed injustice could be devised? To say that a strike founded on such a reduction is illegal because of a rule providing this method of dealing with the grievance, is, in my judgment, equivalent to saying that no labor union shall be permitted to do anything to promote the proper objects of its organization.

It is objected that the rule does not exclude questions arising under contracts subsisting between the employer and individual members of the union. Why should it exclude any question which arises under a complaint of an alleged grievance? Every member of the union is entitled to the support of his fellow members in regard to any question directly affecting his rights as an employee, if he is in the right and his employer is in the wrong. How can the union ascertain whether action should be taken in his behalf without an investigation? If the investigation should show that the aid which he seeks is to enable him to break a contract with his employer, it is to be assumed that the council would immediately decline to help him. If a strike should be ordered to compel an employer to submit to a breach of contract by one of his employees, such a strike would be illegal because it would be for an illegal object, not because of the method prescribed by the rules of the union for investigating the matter, or for declaring a strike. It must be assumed that these rules were adopted to be properly applied in proper cases. They do not purport to authorize the trades council to declare a strike for an illegal object. It is to be presumed that the council would refuse to declare a strike in any case in which the investigation showed that the desired object was illegal. In the present case

there is no testimony nor suggestion that one of the purposes of the strike was to compel submission by an employer to a breach of his contract by an employee.

In framing rules for a labor union, it would be unreasonable and impracticable to mention expressly all possible cases in which a strike ought not to be ordered, and, in terms, to forbid action in all such cases.

I find nothing in this part of the rules and by-laws except that which I should expect to find in those of any well-organized labor union. I discover nothing in the master's report or the evidence to indicate that these rules were intended to be used for the unlawful promotion of a purely sympathetic strike, or that they ever were so used. I have endeavored to show that if any member of a union should have a grievance as an employee against his employer, even if it was not common to members of the union as a class, it would be the duty of his fellow-members, in accordance with fundamental principles of labor unionism, to unite for the redress of the grievance, even by striking, if that should be necessary.

So far as appears, the posting and publication of the open shop rules, and the employment or attempt at employment of non-union men, which were the only matters complained of by the defendants, had a relation to members of each of the local unions before the court, as direct as it had to any other union men. Members of these unions were employed in the shops of the plaintiffs. If the ground of complaint had been a proper subject for adverse action by an individual workman, it would have been a proper subject for investigation and action by the union of which he was a member.

Because the opinion in this case makes the decision turn upon the rules and by-laws to which I have referred, I do not agree with it.

The case was argued at the bar in March, 1907, before *Knowlton*, C. J., *Hammond*, *Loring*, *Sheldon*, & *Rugg*, JJ., and afterwards was submitted on briefs to all the justices.

*F. W. Mansfield*, for the defendants.

*R. Clapp*, for the plaintiffs.