## CENTRAL METAL PRODUCTS CORPORATION v. O'BRIEN et al.

### (District Court, N. D. Ohio, E. D. January 5, 1922.)

### No. 683.

1. **Injunction ⊂⊃63—Interference with contract ground for granting.**

A party to a lawful executory contract has a property right therein and a legal right to protection on its performance against interference by third persons having no interest therein.

2. **Injunction ⊂⊃63—Complainant held entitled to an injunction to restrain unlawful interference with its performance of a contract.**

Complainant had a contract with a city for furnishing and installing metal doors, casings, etc., in a hospital under construction, and in doing the work of installation employed union carpenters. Defendants, who were officers of a sheet metal workers' union, claiming that they were entitled to do the work, called strikes of their men on other city work, whereupon their codefendants, the city engineer and director of public welfare, respectively, without authority from the city, refused to permit complainant to proceed with its contract, using the police to prevent its men from working. *Held*, that such facts evidenced a conspiracy between defendants to deprive complainant of his property and to injure its business which entitled it to an injunction.

3. **Injunction ⊂⊃63—Interference with performance of contract held unlawful.**

That defendants acted on behalf of the members of a labor union of which they were officers for the purpose of enforcing a jurisdictional award by some labor board of a certain class of work to the members of such union, rather than to those of any other union, *held* not to justify them in conspiring with others to prevent, by unlawful means the performance of a contract by defendant.

4. **Injunction ⊂⊃101(1)—Suit to enjoin interference with contract of stranger not within Clayton Act.**

A suit to enjoin interference by officers or members of a labor union with performance of a contract by one between whom and defendants there exists no relation of employer and employee, or other contractual relation, is not one "concerning terms or conditions of employment," respecting which the federal courts are prohibited from granting injunctions by Clayton Act, § 20 (Comp. St. § 1243d).

In Equity. Suit by the Central Metal Products Corporation against William O'Brien and others. On motion for preliminary injunction. Granted.

Stanley & Horwitz, of Cleveland, Ohio, and Walter Gordon Merritt, of New York City, for plaintiff.

J. Paul Thompson and W. J. Dawley, both of Cleveland, Ohio, for defendants.

WESTENHAVER, District Judge. This cause has been heard, argued, and submitted on plaintiff's application for a preliminary in-

junction. The affidavits, exhibits, and the briefs of counsel and authorities therein cited have been fully and carefully examined and considered. Press of business prevents the preparation and filing of an extended opinion at this time, and the urgency of the matter is such that it should be disposed of without delay; hence my conclusion only will be briefly stated.

[1] Plaintiff is, and for a long time past has been, engaged in the business of manufacturing, erecting, and installing metal doors, metal frames, transoms, and sash. It has two factories and places of business, one at Canton, Ohio, and the other at College Point, Long Island. Its method of doing business is to manufacture its product at one or the other of its plants, ship it to the buildings where the same is to be installed, and personally, by means of its agents and other employees, to erect and install it. On June 30, 1921, it duly entered into a contract in writing with the defendant the city of Cleveland, through its duly authorized agents, to furnish, deliver, set up, and install certain interior metal doors, metal sash, metal frames, and casings for the City Hospital of the city of Cleveland, then and since under construction. The amount of this contract aggregates the sum of $224,000. That this contract was duly and legally entered into, that the city of Cleveland has not any right to cancel or terminate it, and that the plaintiff is free to select and employ any competent labor to perform this work of installation, are matters not in dispute. It follows, therefore, that plaintiff's right to this contract, to perform the same, and to reap the profits resulting to it from such performance, is a right of property standing upon the same legal basis and entitled to the same legal protection as is any person's right to full possession and ownership of his private dwelling.

[2] The defendant William O'Brien is vice president of the Amalgamated Sheet Metal Workers' International Alliance and secretary of Local Union No. 65 of that Alliance; J. T. Nester is business agent of Local No. 65, and the defendants Frank Vancourt, Glenn B. Lockwood, William Kerver, David Kahn, and J. Thompson are members of Local No. 65. The Amalgamated Sheet Metal Workers' International Alliance and Local Union No. 65 are both unincorporated, voluntary associations, and these individuals are made defendants as members of Local No. 65 representing the total membership, which it is alleged exceeds 30 in number and are too numerous to be made defendants. The defendant J. Harold MacDowell is architect of the city of Cleveland, having supervision on behalf of the city over the construction of the said City Hospital, and Dudley Blossom, at the time this bill was filed and the case heard, was director of public welfare of said city, and either had or assumed charge of supervising and directing the construction work on said hospital.

The plaintiff fabricated the material at one of its plants, shipped it to and delivered it upon the City Hospital premises, and began the work of installation some time early in October, 1921. The plaintiff sent its supervisory staff to said hospital and employed union carpenters at the union wage scale and on union terms and conditions, and members of the United Brotherhood of Carpenters and Joiners of America to perform the actual work of erection and installation. William O'Brien

and J. T. Nester, acting on behalf of Local No. 65 and the Amalgamated Sheet Metal Workers' International Alliance, demanded that this work of installation should be done by the members of their sheet metal workers' union. Complainant refused to comply with this request, for reasons immaterial to mention, because entirely within its legal rights. Upon this refusal, said O'Brien and Nester then demanded of the architect and director of public welfare that plaintiff be required to discharge its union carpenters and employ members of its sheet metal workers' union to perform this labor or to break the contract of the city with plaintiff and take over the work and do it itself with employees, members of the sheet metal workers' union. This demand not having been acceded to with sufficient promptness, defendants O'Brien and Nester called a strike by withdrawing union sheet metal workers who were working for other contractors on the City Hospital, about the latter part of October, 1921, and, the officials of the city still not acceding to the demand, later, the latter part of November, a further strike was called by withdrawing sheet metal workers, members of Local No. 65, from working for contractors who were engaged upon the Auditorium Building under construction on behalf of the city. There is evidence tending to show that threats were also made to call strikes of sheet metal workers, members of Local No. 65, on school buildings under construction on behalf of the board of education, and also of having other strikes called by other sympathetic unions on the City Hospital and the City Auditorium, which evidence, however, is denied by defendants, and is, for the purposes of the present hearing, regarded as not proved.

Later, the latter part of November or the early part of December, the defendant J. H. MacDowell, city architect, and Dudley Blossom, director of public welfare, acceded to the demands of the defendants representing Local No. 65. They directed plaintiff to discontinue further erection work, and upon refusal of plaintiff, through its employees, so to do, police officers of the city of Cleveland, acting under some unknown and undisclosed authority, appeared at the City Hospital building and excluded plaintiff's employees from the premises and prevented further performance, under threat of arrest. The architect and director of public welfare, while assuming to act on behalf of the city of Cleveland, do not appear to have been acting under any other authority than such as was assumed or usurped by them. Upon this hearing, affidavits were filed on behalf of the city, and argument was made by an assistant to the director of law in support of the position taken by the architect and director of public welfare. Early in December, after procuring from said architect and director of public welfare written assurances that plaintiff must employ members of the sheet metal workers' union or that its contract would be broken and further work of installation done by the city, said O'Brien and Nester caused the sheet metal workers to return to work on the City Auditorium and for other contractors on the City Hospital, but plaintiff has since been unable, by reason of the conduct complained of, to proceed further with its work, which is now at a standstill.

Such, in brief, are the main outstanding facts. No other conclusion therefrom can be drawn than that the defendants have entered into

a conspiracy to deprive plaintiff of its property and to injure its business. A conspiracy is an agreement of two or more persons to commit an unlawful act, or to commit a lawful act by unlawful means. It is immaterial if the city or its architect and director of public welfare were induced to become members of the conspiracy under coercion or to avoid pecuniary loss or other trouble. See Aberthaw Construction Co. v. Cameron, 194 Mass. 209, 80 N. E. 478, 120 Am. St. Rep. 542; Lehigh Structural Steel Co. v. Atlantic Smelting & Refining Co. (N. J. Ch.) 111 Atl. 376; Buyer v. Guillan (2 C. C. A.) 271 Fed. 65.

[3] The conspiracy here was unlawful in its purpose. Its ultimate object was to prevent performance by plaintiff of its contract and to deprive it of its contract, unless it would comply with terms and conditions contrary to its contract rights, such as neither the city nor the other defendants had any right to impose or exact. In making this statement I am not unmindful of the contention of defendants other than those representing the city that they are members of and acting for a labor union, and were seeking only to obtain an advantage for the members of their respective unions, as to which some observations will be here made. The means resorted to to carry out the conspiracy were unlawful. In the first place, the defendants O'Brien and Nester were attempting to induce the city to break its contract with the plaintiff, and it is settled law that one may not induce or persuade, much less coerce, one to break his contract with another. This rule is so fundamental that it has been held that officers and agents of a union may not induce or persuade employees to break a contract of employment. See Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 249, 38 Sup. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461. For additional authority, see Westinghouse Elec. & Mfg. Co. v. Diamond State Fibre Co. (D. C.) 268 Fed. 121; Iron Molders' Union v. Allis-Chalmers Co. (7 C. C. A.) 166 Fed. 45, 91 C. C. A. 631, 20 L. R. A. (N. S.) 315, syllabi 4 and 6.

[4] Defendant's contention that the action herein noted was taken solely in the interests of the union members of the Amalgamated Sheet Metal Workers' International Alliance and its Local Union No. 65, for the purpose of enforcing a jurisdictional award, made by some national board, of this class of work to the sheet metal workers' union, does not justify or protect the defendants. Plaintiff asserts that the bodies joining in, creating, and enforcing the jurisdictional award are a conspiracy or combination in restraint of trade, having for its object the creation of a monopoly in the members of the sheet metal workers' union, in the labor of erecting and installing sheet metal work of this kind and character. I deem it immaterial to consider this last suggestion. The simple fact is that we do not have here a controversy between employers and employees. In no legal sense is this a labor dispute. A labor dispute, as defined in section 20 of the Clayton Act (Comp. St. § 1243d), is one "concerning terms or conditions of employment." In Duplex Printing Press Co. v. Deering, 254 U. S. 443, 41 Sup. Ct. 172, 65 L. Ed. 349, it is held that this labor dispute, in order to be within the privileges accorded employees by the Clayton Act, must be limited to a controversy between an employer and employees. At

page 471 of 254 U. S., at page 178 of 41 Sup. Ct. (65 L. Ed. 349), Mr. Justice Pitney repudiates the view that the words "employers" and "employees," as used in section 20, can be treated as referring to the business class or clan to which the parties litigant respectively belong, and declares that the controversy must be one between some specific employer and persons who stand to that employer as persons who have been in the past, or are in the present, so employed or are seeking employment. It is further held that sympathetic strikes or secondary boycotts as a means of coercing that employer are unlawful, and that an agreement lawful in itself becomes illegal, when means of that character are resorted to, to carry the objects of the agreement into effect. Whatever may have been held in other jurisdictions, the principles of law applicable to this case will be found in Duplex Printing Press Co. v. Deering, supra, and Hitchman Coal & Coke Co. v. Mitchell, supra. These cases have been cited with approval in American Steel Foundries v. Tri-City Central Trades Council (December 5, 1921) 257 U. S. —, 42 Sup. Ct. 72, 66 L. Ed. —, and Truax v. Corrigan (December 19, 1921) 257 U. S. —, 42 Sup. Ct. 124, 66 L. Ed. —.

There is no dispute here between any of the labor union defendants and the plaintiff concerning terms or conditions of employment. They are not seeking to compel plaintiff to employ union labor or to conduct its business on union terms and conditions. Plaintiff's employees are members of the United Brotherhood of Carpenters and Joiners of America, having a national membership of 400,000, as compared with a membership of 24,000 of the Amalgamated Sheet Metal Workers' International Alliance. Plaintiff's union employees are satisfied with the terms and conditions of their employment and the rate of pay, which the evidence shows are the same conditions and wage scale as have been adopted by Local No. 65. If plaintiff accedes to the defendants' demand and employs members of the sheet metal workers' union, then the members of the carpenters' and joiners' union might with equal legal right indulge in the same conduct as is here alleged against defendants. If they did so, their legal standing would be precisely the same. It results that all the cases cited on behalf of defendants, even if not in conflict with the decisions of the United States Supreme Court and the greater weight of authority, have no application whatever to the controversy before the court.

The union defendants have a right to obtain business in the way of employment and wages which plaintiff has the power to dispose of, on the same terms and none other, as the plaintiff would have the right to obtain a contract which a competitor was seeking to obtain. In no event does that right include the right to induce or persuade another to break an existing contract, much less to do so by coercion, or by the calling of sympathetic strikes and the institution of secondary boycotts. If plaintiff were employing nonunion laborers and undertaking to perform this contract on an open shop basis, the better considered cases all hold that defendants might not resort to the means to which they are now resorting, to prevent the performance by plaintiff of its contract. See Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 249, 38 Sup. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461; Aberthaw Construction Co. v. Cameron, 194 Mass. 209,

80 N. E. 478, 120 Am. St. Rep. 542; Burnham v. Dowd, 217 Mass. 351, 104 N. E. 841, 51 L. R. A. (N. S.) 778; Pickett v. Walsh, 192 Mass. 572, par. 5 of head notes, 78 N. E. 753, 6 L. R. A. (N. S.) 1067, 116 Am. St. Rep. 272, 7 Ann. Cas. 638; Buyer v. Guillan (2 C. C. A.) 271 Fed. 65; Lehigh Structural Steel Co. v. Atlantic Smelting & Refining Co. (N. J. Ch.) 111 Atl. 376.

The remedy at law by an action for breach of contract against the city is not adequate. In the first place, it does not appear that the city, through any properly and lawfully constituted authority, is a party to the conspiracy, and no one except the city council could properly commit a legal breach of plaintiff's contract. In the second place, the injury to plaintiff's business, good will, and trade could not be measured or included in determining the damages in an action at law. For this and other reasons, it is settled law that injunction is the proper remedy. See Lehigh Structural Steel Co. v. Atlantic Smelting & Refining Co. (N. J. Ch.) 111 Atl. 376; Aberthaw Construction Co. v. Cameron, 194 Mass. 209, 80 N. E. 478, 120 Am. St. Rep. 542.

A preliminary injunction will be granted as prayed for in paragraph 1, except as to the last sentence thereof, which does not appear at this time to be justified upon the present state of the record. Bond in the penalty of $2,000 will be required, conditioned to pay such costs and damages, if any, as the defendants or any one of them may sustain, or as may be awarded against plaintiff in the event this injunction shall be held to have been improvidently awarded.