## COLUMBUS HEATING & VENTILATING CO. v. PITTSBURGH BLDG. TRADES COUNCIL et al.

(District Court, W. D. Pennsylvania. February 1, 1927.)

No. 1780.

Injunction ⚫136(2)—Plaintiff held entitled to preliminary injunction, where union ordered employees to leave work solely to compel unionization of plant in another state (Sherman Anti-Trust Act [Comp. St. § 8820 et seq.]; Clayton Act).

Where there was no controversy over conditions of employment between plaintiff furnace manufacturer and its employees, when union ordered plaintiff's employees in certain shops to stop work solely to compel unionization of another plant of plaintiff in another state, and threatened to call general strike of building trades if plaintiff continued to attempt to carry out its contracts to install furnaces, *held* that, under Sherman Anti-Trust Act (Comp. St. § 8820 et seq.) and Clayton Act (38 Stat. 730), plaintiff was entitled to preliminary injunction.

In Equity. Suit by the Columbus Heating & Ventilating Company against the Pittsburgh Building Trades Council and others. Plaintiff's application for preliminary injunction granted.

Weil, Christy & Weil, of Pittsburgh, Pa., for plaintiff.

Geo. F. P. Langfitt, of Pittsburgh, Pa., for defendant.

THOMSON, District Judge. This is an application for a preliminary injunction, a restraining order having heretofore issued without notice by the Court. As the right to a preliminary injunction must depend upon the facts, I find these to be as follows:

First. The Columbus Heating & Ventilating Company is an Ohio corporation, its plant being located at Columbus, where it manufactures its product, heating and ventilating apparatus and equipment. The factory is and has been operated as a nonunion or open shop. The company installs its plants in Pittsburgh and vicinity by its own erection force, which force is located at Pittsburgh, and its members are members of local Union No. 12, of Pittsburgh, of the Amalgamated Sheet Metal Workers' International

Alliance. These employees, members of such alliance, have no connection with those employed in the plant at Columbus.

Second. The International Alliance, of which the Pittsburgh branch is a part, has for a long time attempted to unionize the company's employees at Columbus, and make the Columbus plant a "closed shop," employing only members of the labor unions; but such efforts in this regard have failed, the Columbus company having steadily expressed its purpose to keep an "open shop."

Third. At and prior to the issuance of the restraining order, the plaintiff company was engaged in installing heating and ventilating systems in five school buildings in the Pittsburgh district, and it was important in the public schools that the work progress as rapidly as possible, in order that the buildings might be ready for use for school purposes. On or about November 18, 1926, the International Alliance, through the medium of the Pittsburgh local, directed the Pittsburgh employees of the company to cease all work on said school buildings, in which the company was installing heating and ventilating systems, and in compliance with said orders given by W. H. Lyons, who was vice president of the Pittsburgh Building Trades Council and business agent of the Pittsburgh local union, said employees ceased work for about three weeks, and work was not resumed until after the granting of the preliminary restraining order in this case. About December 5, 1926, under an agreement of counsel on the subject, work was resumed. In the interim, all operations of the Columbus Company on said five school buildings were at a standstill.

Fourth. At the time said employees were called off the work, there existed no dispute between the employees at Columbus and the plaintiff company, the employees being entirely satisfied with conditions at the plant, and there existed no dispute between the Pittsburgh employees and the company, they also being satisfied with their wages, working conditions, etc., and ceased work only because of the orders given by said Lyons. When these men were called off they had contracts with the company for a period of time then unexpired.

Fifth. On October 1, 1926, Mr. Lyons sent from Detroit, to Mr. English, the Pittsburgh manager of the Columbus Company, the following telegram:

"Detroit, Michigan, Oct. 1, 1926.

"Mr. English, % Columbus Heating Company. I have been instructed at a meeting held here in Detroit to remove the members of number 12 from the Columbus Heating Company work in Pittsburgh on account of conditions that exist in the shop at Columbus. Kindly take this up with Mr. Bowman at once. Will be back in Pittsburgh about Wednesday, October sixth.

"William Lyons."

Sixth. The following letter was written from Dayton, Ohio:

"Leo A. Green, Sec'y, 407 Washington Trust Building, Pittsburgh, Pa.—My Dear Sir and Bro.: For your information I would like to state that the Sheet Metal Workers' Union locally has placed the Columbus Heating & Ventilating Company's work on the unfair list, and have removed all other members from that company's work. The Dayton Building Trades Council has taken official action to support the sheet metal workers, in their efforts to unionize that company, and will remove all drafts as soon as nonunion sheet metal workers are placed on any job. Two school jobs are tied up at present. Would you please advise me, by return mail, if like action has been taken in your city, and, if so, how many jobs are tied up at this time. With best regards, I am,

"Yours fraternally,

"Ora A. Kress, Secy."

To this letter the following reply was made:

"Local Union No. 449 of Pittsburgh, Pa.

"Headquarters—418 Diamond St., Pittsburgh, Pa.

"Nov. 29, 1926.

"Ora A. Kress, Dayton Building Trades Council, 801 East 5th St., Dayton, O.—Dear Sir and Bro.: Your letter of November 23d relative to Columbus Heating & Ventilating Co. v. Sheet Metal Workers Ass't, received and subject taken up with Brother William Lyons, business representative of sheet metal workers, who in return informs me he has his men taken off three jobs at present, and the Columbus Heating & Ventilating Company is still on the unfair list in our council.

"Fraternally yours,

"Leo A. Green, Secy."

Seventh. It is provided in section 33 of the constitution and by-laws of the Pittsburgh Trades Council as follows:

"Strikes must be called by the council or executive board. When strikes are called, the council shall have full jurisdiction over the same, and every contractor who works on a struck job or employs nonunion men to work on a struck job, shall be declared unfair and all union men shall be called off from his work or job. The business agent of the coun-

cil shall have the power to order all strikes when instructed to do so by the council or board of business agents. Any member of an affiliated craft who refuses to stop work when ordered to do so by the business agent of the council shall be reported to the council. All employees on a struck job shall leave the same when ordered to do so by the business agent, and remain away from the same until such time as a settlement is made or otherwise ordered."

Section 40 provides:

"In case it becomes necessary for a local union or district council to withdraw their men from a job, said dispute shall be reported to the next regular meeting of the board of business agents, who shall take the necessary action that will protect the best interests of the affiliated organizations."

Eighth. At a meeting of the Pittsburgh Building Trades Council, the letter from Ora A. Kress, Secretary, to Leo A. Green, Secretary of the local council, was read, and the minutes have this entry: "Communication from Dayton Building Trades Council was read in regard to Columbus Heating & Manufacturing Company. Referred to B. of B. A." (that is, referred to the board of business agents). This latter board consists of the business agents of the different organizations affiliated with the Pittsburgh Building Trades Council. A minute, under date of November 29, 1926, of the board of business agents, contains this entry: "Communication from Dayton Building Trades referred to Brother Lyons."

Under date of December 1, 1926, a report was made by Lyons, the minute of the board of business agents being as follows: "Lyons reports Columbus Heating Company unfair to sheet metal workers." At this meeting Mr. Lyons himself presided. It appears from the evidence, that the business agent has authority to order all members of the organization of his individual trade to stop work and remove from the job, although no strike has been called on that particular job. He can withdraw the men until the matter has been adjusted and then return them, and can keep the men out or order them back according to his discretion, without submitting the matter to any other organization. On exercising any such power, the business agent makes report to the Building Trades Council.

Ninth. Shortly prior to, at the time of, and after calling the men off, the said Lyons made certain threats to the local manager of the Columbus Company, to the architect of the Swissvale School, the architect of the Washington School, at Carnegie, Pa., and the contractors at said schools, in substance, that his action in calling off the Pittsburgh employees had the support of the Pittsburgh Building Trades Council, and its affiliated organizers, comprising the majority of the building trades, and that, if the Columbus Company attempted to continue its operations in said school buildings in the Pittsburgh district that a general strike of the building trades engaged on said buildings would be called. The purpose of this action on the part of said Lyons was to compel, through pressure on the Columbus Company at Pittsburgh, the unionizing of the plant at Columbus.

Tenth. The Columbus Company, after investigating the situation, and particularly the threats and statements made by the said Lyons, and by reason thereof, fearing the precipitation of a general strike, applied for a preliminary restraining order to prevent the loss which would ensue thereby, which restraining order was granted about December 5, 1926. Thereafter all attempts at settlement having failed, hearings were held and testimony taken to determine whether a preliminary injunction should issue.

In the circumstances detailed in the above findings of fact, which, I think, on the whole cannot be seriously controverted, the court feels constrained, under the law as we find it, to grant the preliminary injunction prayed for. To restrict the broad interpretation which might have been given to the Sherman Act (Comp. St. § 8820 et seq.), practically preventing all strikes by labor unions, the Clayton Act (38 Stat. 730) was passed. After the passage of this act a series of cases followed, which finally resulted in a definite determination by the Supreme Court of the United States as to the proper meaning and application of the Clayton Act.

The case of Duplex Co. v. Deering, 254 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196, involved the question whether an organization of machinists, with headquarters in New York City, and a larger organization of national scope in which they were affiliated, could lawfully institute a secondary boycott, centered particularly in New York, to compel the manufacturer of printing presses to unionize its factory in Michigan, in which there had been an unsuccessful strike, and enforce there the "closed shop," the eight-hour day, and the union scale of wages. The Supreme Court, in reversing the Circuit Court of Appeals of the Second Circuit, held that the methods employed by defendants constituted a combination and conspiracy to restrain interstate commerce, against which the

manufacturer was entitled to relief under the Sherman Act, as amended by the Clayton Act; that the acts of Congress are paramount in their field and must be given full and independent effect, and, in determining the right to an injunction under the Sherman and Clayton Acts, the legality or illegality of a boycott under common law or state statutes is of minor consequence; that the restraint of interstate commerce, produced by peaceable persuasion, violates the Sherman Act, and is not justified by the fact that the participants have an object beneficial to themselves or their associates, which they might have been at liberty to pursue in the absence of the statute.

The court held that section 6 of the Clayton Act (Comp. St. § 8835f), which declares that nothing in the anti-trust laws shall be construed to forbid the existence and operation of labor organizations, or forbid their members from carrying out the legitimate objects thereof, and that such organization shall not be construed to be illegal combinations in restraint of trade, assumes that the normal objects of such organizations are legitimate, but contains nothing to exempt them from accountability when they depart from objects that are normal and legitimate, and engage in an actual combination or conspiracy in restraint of trade; that section 20 of the Clayton Act (Comp. St. § 1243d) relates only to a case between employer and employee, * * * involving or growing out of a dispute concerning terms or conditions of employment; that this section confines the exceptional privilege to those who are proximately and substantially concerned in an actual dispute respecting the terms or conditions of their own employment, past, present, or prospective; that it does not use the words "employers and employees" in a general class sense, or treat all the members of a labor organization as parties to a dispute which affects but few of them, and that the Clayton Act was not intended to legalize the secondary boycott.

The general propositions enunciated in this case, I think, are now regarded as the settled law. See, also, Eastern States Lumber Association v. U. S., 234 U. S. 600, 34 S. Ct. 951, 58 L. Ed. 1490; Central Metal Products Corporation v. O'Brien (D. C.) 278 F. 827, and Buyer v. Gillan et al. (C. C. A.) 271 F. 65, 16 A. L. R. 216.

Here there existed no controversy over the terms or conditions of employment between employer and employees. No such controversy existed in the Columbus plant, nor between employer and employees in Pittsburgh. The sole purpose of withdrawing the men from the Pittsburgh shops was to compel the unionizing of the Columbus plant. This is not even controverted.

While it is true that no sympathetic strike in Pittsburgh was actually called, the situation of real danger to the plaintiff company, appears from the consideration of the facts hereinbefore found. The fact that the Amalgamated Sheet Metal Workers' International Alliance, by their acts and repeated declarations of their officers, evinced a steady and determined purpose to compel the unionizing of the Columbus Company's plant; the close affiliation of this organization with the Pittsburgh Building Trades Council; the telegram from Lyons, vice president of the Pittsburgh Trades Council, and business agent of the Local Union No. 12, of the Sheet Metal Workers of the International Alliance, notifying the company that its men will be called off all work in the Pittsburgh district on account of conditions existing at Columbus; the interview of the company's representatives by union agents, where the former are advised in substance that they must unionize at Columbus or be put out of business, and that they will be supported by the Building Trades Council; following this, the actual calling out of the Pittsburgh employees of the plaintiff company; the letter of November 23d from the secretary of the Dayton Building Trades Council to Mr. Green, secretary of the like organization in Pittsburgh, informing him that the sheet metal workers' union locally, had placed the Columbus Company's work on the unfair list and had removed all their men from the company's work; that the Dayton Building Trades Council had taken official action to support the sheet metal workers in their efforts to unionize that company, and that they would remove all crafts as soon as non-sheet metal workers are placed on any job, and inquiring if like action had been taken in Pittsburgh, and, if so, how many jobs were tied up; the reply thereto that the Columbus Company was still on the unfair list in the Pittsburgh Council; the report as to the calling off of the men, made to the next meeting of the board of business agents, and their action thereon as disclosed by the minutes—all these facts, and others disclosed by the evidence, establish a very eminent probability that the threatened action of the officers would actually be taken, which would necessarily have resulted in irremediable loss to the plaintiff and a very serious detriment to the general public. To prevent such threatened illegal act is

peculiarly within the province of a court of equity. The granting of a preliminary injunction, while protecting the rights of the plaintiff, would in no substantial way invade the legal rights of the defendant.

At the hearing of this case, the court ordered that the bill be dismissed as to Walter Greenleaf, individually and as business agent of Carpenters' District Council of Pittsburgh, not being a member of the Pittsburgh Building Trades Council. It was further developed during the hearing that George Jones, individually and as business agent of Pittsburgh Union of Marble Setters, of the Brick Layers', Masons', and Plasterers' International Union of America; Pittsburgh Union of Marble Setters, of the Brick Layers', Masons', and Plasterers' International Union of America; and also John M. Dorsey, individually and as business agent of Pittsburgh Union of Tile Layers, of the Brick Layers', Masons', and Plasterers' International Union of America; Pittsburgh Union of Tile Layers, of the Brick Layers', Masons', and Plasterers' International Union of America, were not members of the Pittsburgh Building Trades Council, and as to these the bill is dismissed. As against the other defendants, the preliminary injunction prayed for is granted.