## HOTEL STATLER CO v CONVERSE et, etc

Ohio Common Pleas, Cuyahoga Co

No 433403.   Decided Sept 27, 1935

## OPINION

### By JOY SETH HURD, J.

As heretofore stated it has been conceded in this case for the record that there exists between the Statler Hotel Company and its former employees a "legitimate trade dispute." Therefore under existing Ohio law certain rights accrue to the defendant unions and their members.

Fundamentally the principles which apply in a suit where an injunction is sought in controversies between employers and employees are the same as apply in any other case in which it is claimed that individual or property rights have been unjustly affected or interfered with in such a manner as to make the ordinary legal remedies inadequate.

The principles of law involved are clear. The difficulty in the instant case is presented when we come to the application of the principles of law to the facts in the case. There is no question under the law as to the right of the plaintiff, the employer, to conduct his business without illegal interference, and there is no question that legal means employed by the defendant unions and their members must not be curtailed. The Supreme Court of Ohio in the LaFrance case said:

"Equality of justice demands that in any controversy the rights of all parties be scrupulously maintained. The right of workmen to be employed, irrespective of union membership, must be maintained; the right of the employer to conduct his business without illegal interference must be upheld; and legal means employed by strikers must not be curtailed. Among the latter are the right of peaceful picketing, the peaceful persuasion of employees to terminate contracts at will, and the peaceful persuasion of expectant employees not to accept work with the employer in ques-

tion." **LaFrance Co. v Electrical Workers Union, 108 Oh St, 95.**

In an earlier case involving this same plaintiff, The Statler Hotel and its employees, Judge Lawrence of this court said: "There is no question of the right of the former employees of the Statler Company to strike and quit their employment, or of their right to use peaceable argument and persuasion to induce others not to accept employment in their places. They also have the right, by fair and peaceable means, to advise or persuade those who have accepted such employment, to quit the same, there being no proof of any attempt to induce such persons to break a contract for a definite term of service."

On the other hand it is well settled law that the rights guaranteed to the defendant unions and their members include only **peaceful** and **lawful** means. They may not commit acts of violence, coercion, intimidation, and they may not obstruct access to their employer's place of business and they may not interfere with the guests or patrons of their employer in any way and neither may they obstruct the public highways in any way. Picketing which is not for the purpose of persuasion or for the purpose of obtaining or communicating information is unlawful although peaceably carried on.

Furthermore, in the same earlier case it was held:

"There can be no question that the strikers or others associated with them, have no right to use threats, violence, intimidation or coercion to accomplish these objects. Nor have they a right to obstruct access to their former employer's place of business, or to threaten, insult or unreasonably interfere with its guests or patrons in any way, nor have they the right to cause wanton or wrongful injury to the business or property of the plaintiff, or to join together with the motive or intent of causing such injury." Statler v Restaurant Employees, supra.

In the same case the court said further: "The weight of authority supports the right of strikers, as an incident of their right of persuasion, as well as a means of obtaining information, to maintain what are called "pickets", provided such pickets are limited in number, and the picketing is carried on in a peaceable and lawful manner without violence, threats or intimidation, without obstruction to the premises of any other person and without annoying others or causing a nuisance in the vicinity by loud cries, noise or other disturbance. In other words, whether picketing in a given case is lawful or otherwise, depends on the manner in which it is carried on." Statler v Restaurant Employees, supra.

The court can well adopt and does adopt the language of this opinion as its own as applied to this case. The present hearing is concerned with the motion to vacate or modify the injunction originally granted. This motion is brought under the provisions of §11891 GC, which is as follows:

"Motion to vacate or modify injunction. When, before the trial, an injunction has been granted a party may apply to the court in which the action is pending or a judge thereof to vacate or modify it. The party applying for such vacation or modification shall give to the adverse party such notice of time and place at which the the motion will be heard as the court or judge may deem reasonable. The application may be made upon the petition and affidavits upon which the injunction was granted or upon affidavits on the part of the party enjoined with or without answer."

Notice was given of the hearing and oral testimony was adduced by both sides. The evidence shows clearly and convincingly that since the granting of the temporary order herein there have been a number of violations including two stench bombings, an attack upon an employee of the plaintiff and the interference with the delivery of mail by parcel post. There is also testimony to the effect that in one instance transportation of baggage of a guest was interfered with. It has been clearly shown that there have been at times congregations of people at the rear entrance to the hotel and on the east and west side of 12th Street. Witnesses for the defendants have admitted walking back and forth and remaining on the picket line for some considerable periods of time. Evidence is clear that automobiles, some owned or controlled at least by the defendant, have been parked at the rear of the hotel on 12th Street and that sometimes those frequenting the picketing lines have occupied the same. The evidence is also quite clear that at times when deliveries of goods were about to be made that large groups of people would congregate at the point of delivery.

Evidence is also clear that one of the pickets violated the order in that he talked

in a very loud tone of voice so that he could be heard for some considerable distance away making remarks derogatory to the plaintiff.

There was also an incident of the finding of an automobile, the property of a person connected with one of the defendants, in which there was a number of paving bricks or other bricks, the number and the character of the bricks being somewhat uncertain, as the evidence is conflicting.

In fairness to the defendants it should be stated that no evidence was adduced connecting the defendants with the stench bombs aforesaid. No evidence was adduced showing any overt act or intention to commit an overt act by the defendants in connection with the automobile in which the bricks were found. It should also be stated that a large number of people who were congregated at various times and places were people who had no connection whatsoever with the activities of the defendants but were merely curiosity seekers and others who stopped because they were interested in possible developments.

It should also be stated in fairness to the defendants that with the exception of the picket who talked or shouted in a loud tone of voice there was no other evidence of any violence by the pickets who were stationed for picket duty in accordance with the order of the court.

It should also be stated that a large number of guards had been hired by the plaintiff who undoubtedly aggravated the situation considerably by their activities, both within and without the hotel. For instance guards were dressed in doormen's uniforms and on several occasions annoyed, aggravated and insulted pickets who were in the act of peaceful picketing and that upon one occasion one of such guards became intoxicated and with the evident purpose of molesting and interfering with the pickets entered the picket line and jostled them and insulted them in other ways.

It was admitted by the manager of plaintiff's hotel that there was considerable noise and disturbance within the hotel upon certain occasions brought about by the presence of the guards employed by the plaintiff. The evidence also is to the effect that the plaintiff hotel has dispensed with about 33 of such guards and discharged the one who was guilty of the intoxication and abuse of the pickets.

In its previous order the court allowed four patrols, two to be stationed on Euclid Avenue and two on East 12th Street, whose activities were restricted merely to peaceful persuasion and conversation with employees. They could not address guests or passersby and they could not do picket duty.

The court, in reviewing all of the evidence, holds that certain members of the defendant are responsible for some of the overt acts committed since the granting of the injunction. The evidence is clear and convincing that certain of the defendants participated in an unjustifiable and unwarranted attack upon one of the employees of the hotel, severely beating him and injuring him in clear violation of the order, and that at least one man stationed as a patrol on East 12th Street participated in this attack.

The evidence also is clear and convincing that certain of the defendants interfered with the delivery of goods sent to the hotel by parcel post, that they used abusive and threatening language toward the driver of the United States mail delivery wagon who was delivering said goods and forced him at that time to turn his delivery sheets over to them for examination before permitting him to make the delivery.

The order previously entered in this case was very specific to the effect that there should not be any violence and that there should not be interference in any way with the deliveries of any kind. These acts of the defendants were open, flagrant violations of the orders of the court and are indefensible on any ground, and the defendants must accept responsibility for the acts of their agents in respect of these violations. These overt acts committed in the manner in which they were committed and the conditions existing since the issuance of the original order convinces the court that there must be a further modification of the order heretofore granted, in order that there may be precluded any probability of the renewal of any such incidents or conditions.

The court is also convinced that some of the defendants did not understand the provisions of the injunction and while they violated the order that such violations were unintentional and were not serious in nature. While such ignorance of the terms of the order does not excuse, still it negatives any malicious intent to disobey the orders of the court.

The court also holds that the plaintiff is not without blame and responsibility for some of the incidents which occurred due to the fact that a carte blanche order was given to some firm or association to supply guards and that the plaintiff did not investigate the character of the guards employed with the diligence that should have

been exercised in view of the tense situation existing on the premises.

The court on reviewing all the evidence reaches the conclusion that to grant the application of plaintiff to the extent prayed for in its application to modify would work an injustice upon those defendants who were not involved in any violations of the order and would be an evasion of their right of peaceful picketing allowed by law; that the court should not in equity and justice punish all of the defendants and deprive them of certain rights allowed by law because of the overt acts of violation by some few of their number. On the other hand the plaintiff has the right to operate its business without any illegal interference and the public have the right to go peacefully about their business in the vicinity of the premises of the plaintiff without any obstruction or interference. The public highways must be kept open for travel and transportation in the vicinity of the hotel and guests and employees must have free access without obstruction or interference to and from the premises of the plaintiff. This right of ingress and egress of the plaintiff, its guests, agents and employees and the rights of the public must be maintained allowing at the same time to the defendants their right of peaceful picketing and persuasion allowed by law.

The court therefore reaches the conclusion on all the evidence that in order to insure the operation of the plaintiff's business and the safety of its employees and guests without illegal interference and to permit the free use of the public of the public thoroughfares in and around the premises of the plaintiff, that certain modifications of the original order should be put into effect, particularly in the light of developments above referred to since the original order was made.

The court therefore grants an order modifying the order previously made herein so as to define and restrict the area within which all loitering, congregating or picketing shall be restrained. This area is defined as follows:

East 12th Street from the center line of Euclid Avenue to the center line of Chester Avenue, Euclid Avenue from the easterly lot line of the Union Club to a point 100 feet west of the premises of the plaintiff, bounded on the south by the center line of Euclid Avenue; Chester Avenue from a point 100 feet east of East 12th Street to

a point to be defined as the easterly line of the Union Trust Building and bounded by the center line of Chester Avenue; that the patrols heretofore allowed be removed and the pickets restricted as follows:

Three at the Euclid Avenue entrance who shall as provided in the original order occupy such a distance from the entrance way of the hotel as will permit persons entering and leaving the hotel to do so without passing the said pickets.

Two pickets at the East 12th Street side entrance of the hotel and two pickets at the employees' entrance of the hotel.

Each picket shall be identified as such by an appropriate badge or ribbon and the names of the pickets and the hours during which they shall be on duty shall be filed with the president of the Cleveland Federation of Labor on the condition that such President of the Cleveland Federation of Labor shall keep a complete and accurate list of the names and addresses of the pickets and the time in which said pickets serve and said list to be available to inspection at all times under court order.

In the event that the President of the Cleveland Federation of Labor does not accept the conditions then some other person will be designated by the court under like conditions; that all deliveries to the hotel shall be without molestation or interference of any kind whatsoever; and that the fourth paragraph of the present order shall be made specifically to apply to all deliveries intended for plaintiff and for its guests.

The court also issues an order under the equity powers of the court, based on evidence of unwarranted and illegal activities of plaintiff's guards hereinbefore referred to, enjoining the plaintiff from permitting any guards or other employees to interfere with peaceful picketing and peaceful persuasion by the defendants as allowed by this order.

In order that this order may be properly carried out by the defendants it is considered that certain officers of the union should have the privilege of visitation to the picket line, in order to supervise the same when necessary, without however, themselves doing any picket duty. The order will include by name the officers who are authorized to perform this service.

A decree of modification will issue accordingly.