**SAVOY REALTY CO v McGEE et**

Ohio Common Pleas, Cuyahoga Co

No 434407. Decided Oct 15, 1935

Stanley & Smoyer, Cleveland, and Pennell & Johnson, Cleveland, for plaintiffs.

Wm. J. Corrigan, Cleveland, and Payer, Corrigan & Cook, Cleveland, for defendants.

688

## OPINION

By JOY SETH HURD, J.

Many cases have been cited by counsel in a most able argument to the general effect that the court may not enjoin free speech, the printing and proclaiming of the truth, freedom of assemblage and certain inalienable rights which are guaranteed under our constitution and laws and with which a beneficent creator has endowed us. With these cases and with these arguments the court is most fully and most completely in accord. But the court has not by its order issued herein denied any of these rights or Constitutional guaranties for the court finds that the Constitutional rights of plaintiff and its tenants have been invaded rather than any such rights of the defendants.

A former able and learned judge of this court, Judge Lawrence, said in the case of **Statler Company v Hotel and Restaurant Employees International Alliance,** reported in **Volume 19, Ohio Nisi Prius Reports, (n. s.), page 375,** that "little aid is to be derived from an examination of the decisions of courts in other similar cases, for almost always the question comes to the application of old established principles to the facts of the particular case." This same opinion had been voiced by learned counsel in argument in this case. After considering a wealth of material in decided cases in relation to this case, we are more than ever impressed with the correctness of the statement of the learned jurist.

Another court has said "Each suit for injunction against picketing must be decided strictly on its own facts by balancing considerations of sound public policy." A. S. Beck Shoe Corporation v Johnson, 274 N. Y. S. 946.

And in line with this doctrine so enunciated, this court must decide the issues in this case strictly on its own facts by balancing considerations of sound public policy, and by applying the great principles of equity jurisprudence.

And here we make a very interesting discovery. It appears that in all the history of equity jurisprudence and of labor law there never has been a reported case that presents similar facts. An exhaustive search of digest indices does not reveal a similar situation. Counsel have cited hundreds of cases involving labor disputes, but not one case similar to this case. This shows that this court has an entirely new set of facts presenting a new problem in equity jurisprudence for solution. The situation presented here is unique. Cases cited by counsel concern principally labor relations between employer and employee and this with one or two exceptions where there is a dispute between the employer and his striking workmen. We do not have such a situation here. The principles cited in these cases are undoubtedly sound as applied to the facts therein, but they do not have application here because the facts are not in any respects similar. It is in vain therefore that we look for precedent, because there is no precedent on the facts as they are here presented.

However this may be as to facts, we find that when we make application of well established legal principles to the facts in the case the position of the defendants is untenable on many grounds.

One respect in which the position of the defendants is unsound is the fact that in addition to picketing the stores and theatre located on the ground floor of this building, they have also been laying siege to and carrying on a blockade against the residences of a great number of families residing in the apartment building with whom there exists no dispute whatsoever. In the absence of a legitimate trade dispute with the plaintiff in this case there exists no right or warrant in law for such an assumption of authority and power by the defendants. They have by their conduct stopped deliveries of the necessities of life to these families in their homes. Their position in this respect is fundamentally wrong, and brings to mind the familiar statement brought down from the early days of the English Common Law and that is "A man's home is his castle." All citizens have a right to be secure in their homes, free from unlawful molestation or interference. One thing present in the usual picketing case is entirely absent here and that is the presence of the employer or some officer or shop of the employer on the premises picketed. All of this conduct is carried on because of one janitor who is satisfied with his position in all respects. Counsel for defense has a number of times in these hearings stated that the plaintiff in this case is not the real party in interest. Testimony was introduced in these hearings with respect to a firm known as The Cuyahoga Estates Company, it being claimed that said company had refused to deal with the defendants. If any legitimate dispute exists between the defendants and that company, such a fact does not warrant or justify the defendants in their attitude and conduct against this plaintiff.

The court in this case has held that the defendants were carrying on a secondary

boycott. The briefest definition the court has found as to a secondary boycott is in a Rhode Island case, where the court held:

"A secondary boycott is a combination to influence a party by exerting some economic or social pressure against persons dealing with him." Boomes v Providence Local, etc., 155 R. I. App. 581.

In a recent New York case the court declared against secondary boycotts saying: "Union threats to picket stores selling plaintiff's bread followed by truculent visitations, picketing and meetings in front of stores ignoring threats, held, a 'secondary boycott' restrainable by injunction. Geo. F. Stuhmer & Co. v Kornman, 269 N. Y. S. 788.

"The view now prevailing in most of the courts of this county is that secondary boycott may not lawfully be employed in a labor dispute, and this is the view adopted by a majority of the cases in Ohio." 24 Ohio Jurisprudence, §61, page 676.

This proposition appears to be the law when the boycotting and picketing is done in furtherance of a legitimate trade dispute. In the instant case the court has held that there did not exist between the plaintiff and the defendants a legitimate trade dispute at the time the picketing commenced.

The Supreme Court of the United States has held a secondary boycott illegal in two important cases. Duplex Printing Co. v Deering, 254 U. S. 443, and Bedford Cut Stone Co. v Journeymen Stone Cutters Assn., 274 U. S., 37.

In the Duplex Printing case, supra, the court said:

"A secondary boycott is a combination not merely to refrain from dealing with a person, or to advise or by peaceable means persuade his customers to refrain, but to exercise coercive pressure upon such customers actually causing them to withhold or withdraw their patronage, through fear of loss or damage to themselves should they deal with him."

By the great weight of authority the secondary boycott has been declared illegal in the Federal Courts and by the courts of many states including Ohio. The following may be cited in support of this statement.

O'Brien v Fachenthal, 278 Fed. 827, 5 Fed. (2nd) 389 (C.C.A.)

Central Metal Products Co. v O'Brien, 278 Fed. 827.

Hitchman Coal Co. v Mitchell, 245 U. S., 249.

Hodge v Meyer, 252 Fed. 479.

American Malting Co. v Keitel, 209 Fed. 351.

Lehigh Structural Steel Co. v Atlantic Smelting and Refining Works, 92 N. J., Equity, 131.

McCord v Thompson-Starrett Co., 129 (N. Y.) App. Div. 130.

Pickett v Walsh, 192 Mass. 572.

Stearns Lumber Co. v Howlett, 52 A L.R. (Mass.) 1125.

Blandford v Duthie, 128 Atl. 138 (Md.)

R. and W. Hat Shop v Sculley, 90 Conn. 1.

Beck v Teamsters Protective Union, 118 Mich. 497.

Moores v Bricklayers, 10 O.D., Rep. 665.

There are, however, some contrary decisions as follows:

P. M. Lisse, Nick Paul et, v Local Union No. 31, Cooks, Waiters and Waitresses, decided by California Supreme Court, January 29, 1935, 89 Cal. 141.

National Protective Association v Cumming, 170 N. Y., 315.

Lindsey v Montana Federation of Labor, 37 Mont. 264.

However, a review of the three decisions above mentioned upholding the validity of the secondary boycott discloses that the facts in those cases are in no wise analogous to the facts in the instant case. The California case above cited is a late case but involves a legitimate trade dispute between the employer and employees and is based upon the acts of the striking employees in picketing the premises of their employer. The court in that case prohibited picketing because, as they held, there was physical intimidation of the plaintiff's employees and patrons. The question under discussion here was not before the court in the Montana case. There was no picketing there but the decision concerns the issuance of a circular which was claimed to be unfair by the plaintiffs. In the New York case above cited the strike was in progress and the question of picketing was also involved and in this case also there was a leigtimate trade dispute. In the instant case not any of these factors are present. In the instant case we have what might be termed a tertiary boycott because the clearly defined intent and effort of the defendants is to induce the customers not to deal with plaintiff's customers.

There is another ground on which the conduct of the defendants is illegal and that is inducing or attempting to induce breach of contract. This is clearly illegal in Ohio, even where there is a legitimate trade dis-

pute. LaFrance v Electrical Workers Union, 108 Oh St, 61. Picketing for the purpose of inducing breach of contract between landlord and tenant is clearly illegal. A fairly recent New York State decision contains the pregnant and cryptic statement that—

"Lawful ends must be accomplished by lawful means." Stilwell Theatre v Kaplan, 249 N. Y. S. 122.

This case is not before the court on final hearing but it appears to the court in the evidence adduced on the hearing for a temporary order that the end sought is not being accomplished by lawful means.

The conclusion, therefore, is that the temporary restraining order was inescapably a necessary and valid exercise of the equity powers of the court, upon all the evidence and the law as applied to the evidence.

It remains now to consider whether the defendants were guilty of acts of disobedience and violation of the order.

After a complete and careful analysis of all the evidence, including the admissions of the defendants, this court is convinced beyond a reasonable doubt that the defendants and each of them are guilty of various acts of disobedience of the order of the court heretofore issued herein, and that these acts of disobedience were committed with full knowledge of the said order, and we find that the chief offender and man primarily responsible for the plight in which all of the defendants find themselves is the defendant, John E. McGee. Even before the order was served, but with full knowledge of its issuance, the defendant McGee plotted to circumvent and evade by subterfuge the plain terms of the order. He it was who conceived the plan, carried it out and then supervised and directed its execution.

Beyond a reasonable doubt it has been shown by admissions and evidence that the same men who acted as pickets and patrols before the issuance of the order continued to do so under the instructions, guidance and direction of the defendant McGee, the only difference being that they carried a banner, differently worded and differently attached to their persons, but continued to picket and patrol in violation of the plain terms of the order. The fact that they carried a different banner during their picketing and patrolling is immaterial, and the wording thereon is immaterial. The gravamen of the offense is that they continued to picket, to patrol and loiter. The fact that they carried the new banner did not lessen the gravity of the violation. It was a mere subterfuge designed to circumvent and evade the order of the court. A sort of legal legerdemain was attempted whereby one who had previously been a picket would be changed into something other than a picket by a mere putting on of the sign. It is claimed that the erstwhile picket became a "Sandwich man" doing legitimate advertising, although he continued to picket and patrol. It matters nothing that such picketing was broken up occasionally by sporadic forays into other parts of the same neighborhood and there is no question that on September 28th, 29th, and 30th, the picketing was carried on mostly in front of the Savoy Building. The entire proceeding unmistakably shows a planned attempt to circumvent the court order. The evidence clearly shows the plan was effective for as one truck driver, a member of the truck drivers' Union testified, he saw the sign and thereby knew there was labor trouble and did not make the delivery which he had come to make to one of plaintiff's tenants.

Furthermore, the claimed right to parade the banner in front of plaintiff's property on the ground that it speaks the truth cannot be upheld. When considered in the abstract, without relation to the subject matter and the facts, the bare statement that the owner refuses to bargain collectively with the representatives of the Union may be taken as correct, but when stated with relation to the subject matter and the facts in the case, it is not true, because it is based on a false premise. The wording of the banner assumes as a premise that there is some legal question or dispute between the plaintiff and its employee, the janitor, when in truth such is not the case. It assumes there is some legal question or dispute between the Janitors' Union and this plaintiff when in fact and truth such is not the case. It assumes that there is something legal to bargain about when in truth and in fact such is not the case. Any assumption that there is any legal proposition on which to bargain between the owner of the Savoy Building and the defendants is completely dispelled by the testimony of the defendant Campbell heretofore referred to.

The fact that defendants did not intend to violate the order, as they testified, does not alter the fact that they did so. This case in this respect is very similar to the case of Nusbaum v Retail Clerks' International Protective Association, 227 Ill. App. 206, cited by plaintiff wherein the defendants patrolled the sidewalk carrying a banner on which there was an assumption call-

ing attention to the injunction and calling on Union men to abide by the same. The defendants contended that it was their duty to tell the public of the injunction and to see that same was not violated. In that case the court said that—

"It is apparent that the placard and banner in question were of such a nature as to attract the attention of persons in the vicinity of the store and to lead them to believe that some controversy existed between the owners of the store and their employees. No such controversy existed."

The same words could be applied to this case. The court said further:

"Even admitting that the acts of respondents of which complaint is made do not come within the scope of this definition (i.e. picketing) it does not follow that their acts were not a violation of the injunction order, which was not limited to picketing alone."

The same words could be applied to this case, as in this case the order specifically enjoined the carrying of any banner in the vicinity of the plaintiff's premises.

The last case to which we will call attention is the case of Vetter Mfg. Co. v Humphrey, 132 Wis. 587:

"Syl. 4. Where the court has jurisdiction to issue the injunctional order, an error arising from the order being too broad can be remedied only by motion to modify the same and the party enjoined can not disregard it."

So in this case, the proper procedure if the defendants wished to carry out their plan of so-called advertising by so-called "sandwich men" was to make application to the court for an order to modify the original order instead of attempting to take the law into their own hands as they did. The defendant McGee's testimony indicated that he had doubts about his course of action because he consulted others in respect to his proposed plan and then went ahead with it. His attitude was apparently that his action may have been wrong, but right or wrong he was going ahead with it regardless of consequences.

The case of Vetter Mfg. Co. v Humphrey, supra, is important in another respect and that is in the following words of the court, with which we fully agree,—

"The orders of a court having jurisdiction must be obeyed. If they can with impunity be disregarded they should never have been made. A court which makes such orders and does not enforce them when violations are shown, can give no good reason for its existence. It should be abolished. It is not a court in any true sense of the term."

The court therefore finds the defendants guilty of contempt of court as set forth in the written charges filed herein for a violation of the temporary restraining order heretofore issued herein.