## SALTZMAN v UNITED RETAIL EMPLOYEES' LOCAL NO 112, etc, et

Ohio Common Pleas, Cuyahoga Co

Decided Nov 15, 1937

Sidney D. Rosen, Cleveland, and Stanley & Smoyer, Cleveland, for plaintiff.

Handelman & Handelman, Cleveland, for defendants.

## OPINION

By HURD, J.

This is an action brought by the plaintiff, Robert E. Saltzman, doing business as "Robert's." against the United Retail Employees' Local No. 112, affiliated with the United Reail Employees of America, a C. I. O. affiliate, and individual defendants, Leo Gelman and Morris Horwitz, both of whom are officers of the defendant local union, seeking to enjoin the said defendant union and each and all of the officers and members of said union and all other persons associated with them from picketing plaintiff's places of business, located respectively at 14115 St. Clair Avenue, Cleveland, Ohio, known as the Collinwood store, and 14911 Detroit Avenue, Lakewood, Ohio, known as the Lakewood store, and from doing certain other acts alleged to be an unlawful interference with the business of the plaintiff.

In brief, it is the claim of the plaintiff as set forth in his amended petition that the unlawful acts complained of have been carried on by the defendants in front of the plaintiff's Collinwood store, continuously since October 16, 1937; that the number of pickets has varied from one to ten ordinarily and that on one occasion the pickets numbered as high as between 75 and 100, and that prospective purchasers have been prevented from entering the store of the plaintiff by physical force and by threats of violence and bodily harm, and that the prospective purchasers have been molested and ordered to remain away from plaintiff's store and that in connection with this conduct, vile, indecent, obscene and profane language has been used toward such persons. The defendants have filed a joint answer which admits that in pursuance of a strike called by defendants against the plaintiff, who, they claimed had refused to bargain collectively with his employees, a reasonable number of pickets have been assigned to duty in front of plaintiff's Collinwood store, and allege that these pickets have conducted themselves in a peaceful and orderly manner at all times.

An intervening petition has been filed by new plaintiffs, Peggy Mour, May Cook and Mrs. Belle. Berrick, alleging in substance that under and pursuant to the terms of written contracts entered into between them individually and the plaintiff respectively they are now leasing certain departments of both of plaintiff's stores; that these contracts were entered into on or about the 18th of October and run for a period of one year from said date; that the action of the defendants in picketing said stores is for the sole purpose of coercing these new plaintiffs to constitute the defendant union as a bargaining agency for said new plaintiffs against their will.

The said new plaintiffs then join in the prayer of the plaintiff's petition for relief against picketing and other alleged unlawful acts. The defendants consented to the filing of the intervening petition and answered orally by denying that the leases entered into were entered into in good faith, and by claiming that the said leases were entered into for the sole purpose of enabling the plaintiff to evade his responsibilities as an employer. The evidence discloses substantially facts as follows:

The plaintiff employed in the Collinwood store about five employees who carried on the sales work and the other work necessary to the operation of a retail store selling women's cloaks and dresses, millinery and lingerie. Some time prior to October 16, the date the picketing commenced, it appears that one of said employees had become a member of the defendant union. This employee brought to the store of the plaintiff certain cards in manner and form as follows:

"NOW IS THE TIME TO ORGANIZE
"YOU ARE GUARANTEED THE RIGHT BY FEDERAL LAW."

National Labor Relations Act, §7:

"Employees shall have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection."

"TAKE ADVANTAGE OF THIS LAW AND ORGANIZE

"FOR HIGHER WAGES
"FOR SHORTER HOURS
"FOR SECURITY OF YOUR JOB."

and on the reverse side

"In accordance with my legal rights, guaranteed by the National Labor Relations Act, I hereby designate the United Retail Employees of America, affiliated with the C.I.O., as my agent for collective bargaining with my employers.

"Name (Here appeared signature of employee).

"Address ........., ...... .............

"Employed by ........... .............

"Address at which employed ..........,.

"Classification ...... ...... ...........

"(All information will be held strictly confidential).

"United Retail Employees of America, affiliated with the, C. I. O., 606 Chester-Ninth Bldg., Phone: Cherry 0761, Cleveland, Ohio".

The evidence is clear that these cards were signed by employees of the plaintiff at the instance and upon the inducement of this one employee. The evidence is conflicting as to precisely what representations were made. Some of the employees testified that they signed these cards upon the representation that they would not have to belong to any union and that by signing the cards they would merely be placing themselves in position to receive information and literature from the Union. It is clear from the testimony of all witnesses on this subject that it was not represented that by signing the cards they were thereby becoming members of the Union and it is clear from the wording of the card that by signing the same the persons did nothing more than to designate the defendant Union as their agent for collective bargaining with their employers.

It appears that some time after these cards were signed certain officers of the Union visited the Collinwood store of the plaintiff and requested among other things that the plaintiff sign a closed shop contract. It appears that there were a number of such visits, and that upon one or more of these occasions the employer arranged to have the officers of the Union meet with him and his employees at which time or times all of said employees, except the one employee who was a member of the Union, stated in substance that they did not wish to be represented by the defendants' Union; that they were satisfied with their terms and conditions of employment, and did not wish to have said Union or its officers, bargain collectively for them.

Thereafter upon the 16th of October, upon the occasion of the last visit hereinbefore referred to, upon the call of the ranking officer of the Union, the one employee who was a member of the Union walked out of the store and commenced picketing in company with the officers of the Union and others who were not in the employ of the plaintiff. This picketing was confined to the Collinwood store. There has been no picketing of the Lakewood store. It appears that following this incident the plaintiff and representatives of the defendants' Union met at the office of plaintiff's attorney and a discussion was had and later the same persons met at the office of defendant's attorney and further discussion was had concerning the entire controversy.

There is no conflict in the evidence on the subject of the result of these conferences. The evidence is clear, and the court so finds, that the issue on which the parties could not agree was as to whether or not the defendant Union should represent all of the employees of the plaintiff for the purpose of collective bargaining. It appears that the plaintiff was willing to recognize the Union as a collective bargaining agent for all such employees as were or would become members of the Union, but that the point of difference and the issue on which the final conference broke up was the claim of the right of the defendant Union to bargain collectively for all of the employees of the plaintiff, regardless of Union membership or affiliation.

The court finds from all the evidence as a matter of fact that all of the employees except one who had signed the card above referred to had revoked the authority previously granted by them and had given notice thereof before the picketing herein complained of had commenced. The said employees also appeared in open court and testified under oath that the defendant Union was not their agent and that they did not wish to have the defendant Union represent them as a collective bargaining agent or in any other manner and testified further that they were satisfied with their hours, wages, terms of employment and working conditions.

With respect to the manner and conduct of the picketing the testimony is conflicting on several points. However, the court concludes from the testimony of several disinterested witnesses that at times the picketing was definitely other than peaceful. Disinterested witnesses testified to various acts of excessive picketing and picketing in such a manner as to prevent peaceful ingress and egress to and from the premises. At times the picketing was circular in character, not allowing customers sufficient room to enter the store through the picket line. One witness, a customer, testified that she was physically prevented from entering the store by the conduct of the

pickets and from all the tesimony the court can only conclude that there were times when the conduct of the pickets was such as to interfere seriously and detrimentally with the lawful operation of the plaintiff's business. There was also credible testimony of loud shouting and the use of indecent and profane language. The pickets carried signs bearing the following legends:

"This store is on strike. Local 112, United Retail Employees of America—C.I.O."

"Please do not buy in this store—Help us get a Union wage. Local 112 U.R.E.U. —C.I.O."

It should be said in justice to the defendant officers of the Union that there was an evident effort upon the part of such officers, particularly after the first few days of the picketing, to maintain peaceful picketing. It would appear that at times the situation got out of their control against their will. Upon one occasion, upon a Saturday afternoon according to the testimony, between 75 and 100 pickets apparently coming from the headquarters of the United Automobile Workers' Union located nearby appeared upon the scene and engaged in unlawful picketing to the serious detriment of the plaintiff. It appears from the evidence that the officers of the defendant Union after a time, and with the help of others, dissuaded the members of this group from a continuation of the harmful conduct.

With respect to the leases or contracts entered into by the plaintiff with his former employees after the commencement of the picketing, the court finds that these contracts are not contracts of employment, but contracts of lease, and, having been entered into after the commencement of the difficulties complained of in this case, the court has disregarded the leases or contracts so far as the instant case is concerned, taking the view that the parties, having attempted to change their relationship from the relation of employer and employee to that of independent contractors, did so with their eyes open and knowing the conditions which existed at the time of entering into these contracts. Were these contracts of employment we might be inclined to give further consideration to the evidence on this subject, but as we view this phase of the case the contracts having been entered into after the fact of the dispute should not have any bearing on the question presented for determination in the case before us for consideration.

While there are other facts in evidence, we believe the foregoing substantially states all essential factual elements necessary to a final disposition of the case at bar.

The law is well settled in this state that the right of "peaceful picketing" in the prosecution of a strike depends upon the existence of a legitimate trade dispute. This is the holding of our Supreme Court in the case of LaFrance Co. v Electrical Workers' Local No. 8 et, decided May 29, 1923, and reported in Vol. 108 Oh St page 61. This pronouncement by the Supreme Court was in reality a declaration of principles evidenced by decisions of the lower courts of this state for a period of almost twenty-five years prior to the date of the decision. Some of these decisions were by outstanding judges of the Nisi Prius courts of this and other counties of the state.

Since the date of this decision the principal enunciated has been followed in many cases:

United Tailors Co. v Amalgamated Clothing Workers', 26 N.P. (N.S.) 439; Kilby Man v Molders' Union, 1 Abs 75; Shur-Hirst Co. v Amalgamated Clothing Workers', 5 Abs 551; Louis Bernstein v Retail Cleaners' & Dyers' Assn., 31 N.P. (N.S.) 433; Driggs Dairy Farms v Milk Drivers' Union, 49 Oh Ap 303 (18 Abs 510); 197 NE 250; 3 O.O. 212; Wiley v Union, 32 N.P. (N.S.) 257.

Comparatively recent cases decided by this court wherein the right of picketing was upheld due to the existence of a legitimate trade dispute are as follows:

Hotel Statler v Converse, 19 Abs 569; Brinks, Inc. v J. Kupsky et, No. 431 616 Cuyahoga County Court of Common Pleas (unreported); Geo. A. Church v Gasoline Station Operators' Union, etc., et, No. 435,641, Cuyahoga County Court of Common Pleas (unreported).

Comparatively recent cases decided by this court wherein the right of picketing was denied due to the absence of a legitimate trade dispute are as follows:

Markowitz v Retail Dry Cleaners' Union, 3 O.O. 366; Savoy Realty Co. v McGhee et, 4 O.O. 88; Mutual Benefit Life Ins. Co. v McGee et, 4 O.O. 99.

See also—

24 Ohio Jurisprudence, §52, page 661, et sequi, and list of cases thereunder cited.

In this connection it is well to note that the Ohio rule is in accord with the great weight of authority in other state jurisdictions and in the Federal courts. See La-

France Co. v Electrical Workers' Union, supra, at page 85 et sequi.

A legitimate trade dispute has been defined by the late Judge Foran, formerly a judge of this court, in the case of Park v Hotel et, Employees, Vol. 22, N.P. (N.S.), pages 257, in the following language:

"A trade dispute can only exist or arise where there is a stoppage of work of employees or lockout by the employer, and there is an intention or reasonable expectation upon the part of both employees and employer to resume the relation of employer and employee upon the satisfaction of certain specified conditions prescribed or agreed to by one or both of the parties to the dispute."

It is quite apparent from a study of this case that this definition was arrived at after an exhaustive study of many authorities on this subject both in England and America. We have reviewed some of these authorities including those reviewed by the learned judge and decisions of various courts since that time, and are of the opinion that this definition is in consonance with the great weight of authority on the subject. Accepting this definition as the basis for determining whether or not there exists a legitimate trade dispute, we are compelled to the conclusion that the dispute in the case at bar does not come within the purview of this definition.

It is true that the employees of the plaintiff signed authorizations designating the defendant Union to represent them for the purpose of collective bargaining. Such authorizations were, however, for no fixed period of time, without consideration, and were terminable at will, and while there may be a question as to whether or not such signatures were secured with or without misrepresentation, nevertheless it is clear that the authority therein contained was revoked prior to the time of the commencement of the picketing in this case. Consequently the defendant Union, as a matter of fact, at the time of the picketing did not represent said employees, except the one Union member.

There was no obligation upon the plaintiff herein to accept the defendant Union as the bargaining agent for these employees who did not wish to be so represented, and picketing in such an instance can only be a method of requiring the plaintiff to require his employees to accept the defendant Union as their repre-

sentative. Certainly the plaintiff has no authority in law to require his employees to accept representatives when they do not choose.

As previously hereinbefore stated, there can be no doubt upon an analysis of the testimony of both the plaintiff and the officers of the defendant Union that the only question upon which they could not agree was the claimed right of the Union to represent all the employees of the plaintiff. This does not constitute a dispute between employer and employee, or the authorized representatives of the employees. It is our view, that the concept of any definition on the subject of the question of a legitimate trade dispute includes not only the employees but their lawful representatives, such as the officers of a trade union of which they are members or whom they designate as their agents for the purpose of collective bargaining. In this case the employees had revoked the authority previously given the officers and members of the defendant Union who were then without authority to represent them.

Further it is quite clear that there is not a dispute concerning hours, wages, terms of employment or working conditions as between the employer and the employees, and there is not a stoppage of work of employees or a lockout by the employer.

Certainly the refusal of one employee to work does not constitute a strike of employees in the legally accepted definition of the term "strike." An examination of authorities discloses that the term "strike" in a legal sense connotes the stoppage of work by more than one employee. Consequently we reach the conclusion that we do not have here a strike of employees in pursuance of a legitimate trade dispute. Therefore the right of peaceful picketing allowed by law where there is a strike in pursuance of a legitimate trade dispute fails under the facts in this case.

The defendant in oral argument contended that under authority of the case of Clark Lunch Co. v Cleveland Waiters' Union, 22 Oh Ap 265 (4 Abs 669), picketing is lawful in this case. After a careful consideration of this contention we are of the opinion that the Clark case supra is not analogous to the facts in the instant case.

The points of difference are many. The Clark case was tried upon an agreed statement of facts. An examination by way of comparison of the agreed statement of facts and the facts in this case will readily disclose such differences and that the prin-

ciples set forth in that case concerning the right of boycott have no application to the facts of the instant case.

Holding these views the injunction prayed for herein will be granted restraining the defendants from picketing the stores of the plaintiff as prayed for herein.