## FRANKEL CHEVROLET CO et v MEERCHAUM et

Ohio Common Pleas, Cuyahoga Co

Decided Oct 5, 1938

Stanley & Smoyer, Cleveland, for plaintiff.

Orgill, Maschke & Wickham, Cleveland, and M. A. Picciano, Cleveland, for defendants.

## OPINION

By HURD, J.

These two cases were filed in equity by the plaintiffs praying for injunction and equitable relief against the defendants, and especially for an order restraining the defendants from carrying on picketing operations in the vicinity of the places of business operated by the plaintiffs. The plaintiffs are Ohio corporations engaged in business as dealers in the sale of new and used cars and in the servicing of automobiles. The defendants are officers and members of Auto Mechanic's Union, Local No. 1363, and of the Auto Workers' Union Local No. 18671, and the International Association of Machinists, all of whom together with their respective local unions, being voluntary associations affiliated with the American Federation of Labor are sued individually and as a class.

While these cases have not been consolidated, yet by agreement of counsel with the approval of the court, they have been tried and submitted together, it being conceded by all parties that the facts in general are so similar in nature that the general principles of law involved are alike applicable to the facts in each case. Also by agreement of counsel and the court the cases have been advanced, and are now before the court for final hearing and adjudication on their merits.

In our opinion these cases require the application of principles of law to a state of facts not heretofore presented to any court of record in this state so far as we are able to discover by a search of the reported cases.

The plaintiffs are members of an organization known as the Cleveland Automotive Trade Association, an Ohio corporation composed of automobile dealers in the greater Cleveland territory, which sometime prior to the month of March, 1937, established a Labor Advisory Committee for the purpose of negotiating for certain of its members a general agreement with the defendants, the Auto Mechanics' and Workers' Local Unions, covering labor standards such as minimum rates of pay, terms and conditions of employment.

Negotiations commenced between the Labor Advisory Committee representing 109 dealer members of the trade association, including these two plaintiffs, on the one hand and the Auto Mechanics' & Workers' Unions on the other hand, in March of 1937, and in April of the same year these negotiations culminated in a general agreement, in the form of offer and acceptance, by and between the Labor Advisory Committee of The Automotive Trade Association and the defendant unions, for a period of one year until April 30, 1938, and thereafter unless terminated in writing by thirty days notice, each to the other. These notices were given at or before the expiration as provided by said agreement, whereupon new negotiations were commenced for the year 1938, by and between the defendant unions and the Labor Advisory Board of the Automotive Trade Association representing 82 dealers, including these two plaintiffs. These negotiations continued for a period of approximately two and one-half months, but failed of an agreement due to a number of matters in dispute, the principal point of difference being on the question of rates of pay, the dealers insisting on a reduction and the unions standing steadfast against any such pay reductions.

According to the stipulations filed herein the plaintiffs on May 1, 1938, executed an agreement with The Cleveland Automotive Trade Association by the terms of which they bound themselves for a year to bargain collectively on matters of wages, hours, terms and conditions of employment, and delegated to the Labor Advisory Committee of The Automotive Trade Association, full authority to act for them "in all labor disputes." A complete copy of this agreement is as follows, marked Exhibit J:

### "AGREEMENT OF MEMBERS WITH THE CLEVELAND AUTOMOTIVE TRADE ASSN.

"In consideration of similar agreements made and entered into by and between other licensed motor vehicle dealers of Cuyahoga County with each other and with said Cleveland Automotive Trade Association, the undersigned agrees as follows:

"1. That for one year hereafter with the other dealers between whom and the association there are similar agreements in force, we will, as dealers bargain collectively in respect to the rates of pay, wages, hours of employment, and other conditions of employment of our employees, and for that purpose do hereby delegate to the Labor Advisory Committee of the Cleveland Automotive Trade Association with the right in said committee to re-delegate to others, full authority to act for us as our exclusive representative and agent for the purpose of assisting us in all labor disputes, provided however that said Labor Advisory Committee shall not be authorized

to negotiate or make any agreement binding upon us for a term exceeding one year from the date said agreement is made, and provided further that it shall not execute such agreement on our behalf until the agreement has been approved by a majority of the board of representatives attending a meeting duly called and held, and later by a majority of the association members attending a meeting duly called and held.

"2. We will conform to and abide by all lawful rules, regulations and policies that may be adopted as those of the Cleveland Automotive Trade Association by a majority of its members attending a meeting duly held.

"3. That for the terms of one year we will pay all dues. The present dues are 50 cents for each new and/or used car sold by us, and being due and payable at the time of the filing of the certificate of title or within ten days of presentation of monthly invoice by the Cleveland Automotive Trade Association. It is understoood that amount of dues and the terms of payment are subject to change at the discretion of the Board of Representatives of The Cleveland Automotive Trade Association.

"Dated at Cleveland, Ohio.........1938.
Dealer ...... ..................
By .......................
Address .......... ..... ...........*

The court finds that plaintiffs herein, together with other contracting dealers, who employed exclusively union members, although not themselves required by said agreement to employ exclusively union members, applied the terms of the contract so far as labor standards were concerned, such as wages hours, terms and conditions of employment, to their own employees, who were not members of the defendant unions. It is true that each of these plaintiffs have their full compliment of employees and that not any of their employees are on strike, and that between each plaintiff and its employees there exists no dispute of any kind. It is also a fact that after a strike was declared against other dealers each plaintiff herein entered into a new agreement for one year with its own employees exclusively covering wages, hours, terms and conditions of employment, and providing for reduced rates of pay. However, while these contracts provide for firm agreements, so far as the employees are concerned, they do not so provide so far as the employers are concerned, for by their terms the employees may be "laid off" by the employer "when it becomes necessary

to reduce expenses." The employer agrees that in the "laying off and rehiring of employees, length of service with the employer at the particular task, as well as skill in the task, shall be considered, but not necessarily in the order named. Between two employees "having equal skill for the task, length of service shall control." "In the event any employee is laid off or discharged and after investigation it is proven that any employee has been unfairly dealt with, said employee will be returned to work and will be paid for all time lost, provided his complaint was filed within forty-eight hours with the employer."

The court also finds that the members of the union have attempted to persuade the employees of the plaintiffs to join them in a general strike declared by the defendant unions, which is now in progress against other dealers who are members of the Automotive Trade Association. We find as a fact also that the plaintiff employers permitted the officers of the union to address their employees in a body in an unsuccessful attempt to have them join the defendant unions. It is also a fact that not any of the defendants is an employee or a striking employee of the plaintiff.

In our opinion the question to be determined from this state of facts is whether or not there is in this case a legitimate trade dispute which will justify "peaceful picketing" by the members of the defendant local unions of the plants or places of business of the employer plaintiffs.

After thorough and careful consideration of all the evidence, including the stipulations of the parties filed herein, and the law as applied to the evidence, we have reached the conclusion that there does exist a legitimate trade dispute between defendant local unions and the plaintiff employers which will justify the defendants engaging in what is known in the law as peaceful picketing for the purpose of advertising to the public that such a trade dispute does exist between the said parties, and that in so doing the defendants may use such lawful means as are traditionally allowed under the same or similar circumstances. (Emphasis ours).

Our reason for this decision may be stated as follows: It appears to us that the employers by their own course of conduct over a period of time have established jural relations between themselves and the defendant local unions. Through the agency of The Automotive Trade Association they

entered into contract with the unions for the purpose of stabilizing the industry, covering wages, hours, terms and conditions of employment applying to the entire contractual group. The fact that this agreement did not oblige the plaintiffs to employ exclusively union members does not change the basic fact that the plaintiffs through their lawful representative, the Auto Trade Association, bargained and negotiated for terms and conditions of employment, and accepted the fruits and benefits whatever they may have been which accrued from such agreement. In addition to accepting and applying the fruits and benefits, whatever they may have been accruing from said agreements, in order to secure the agreement in the first instance they acted in concert with the other members of the industry who employed union members exclusively, in attempting to secure wages, hours, terms and conditions of employment satisfactory to them which would be and were equally applicable to all the employees of the industry, union and non-union alike.

Again, at the expiration of their agreement, these plaintiffs again acting through the same agency, together with 80 other dealers, bargained and negotiated for labor standards to be set up in the industry for the year 1938. These employers were certainly in a legal relationship with the defendant unions during the year 1937 when that contract was in existence. Then in the year 1938, although the contractual relationship had been terminated, they continued to act in concert with the other dealers for a period of two and one-half months to exert whatever economic pressure this association gave them, and in so doing attempted to renew the 1937 contract, but insisted upon reductions in wages. We believe that this entire course of conduct gave rise to a trade dispute.

The principle involved might be stated as follows:

Where employers, members of a trade association, delegate to said trade association full and complete authority to bargain for them and in their behalf with labor unions for wages, hours, terms and conditions of employment, and where as a result of such delegation of authority, and bargaining, a contract by offer and acceptance is entered into between said trade association on behalf of the employers, the fruits and benefits of which the employers accept and apply to their own employees, even though said employees are not mem-

bers of the union, and in so doing act in concert with others in establishing or attempting to establish wages, hours, terms and conditions of employment which shall affect and be applicable to all the employees of the industry, including members of the local unions, and where, upon determination of said agreement the employers again acting in concert with other members of said trade association through the agency of said association, bargain collectively, in respect of rates of pay, wages, hours, terms and conditions of employment which shall be applicable not only to their own employees but also to all employees of the employee group, and for that purpose delegate to a labor advisory committee of the trade association, with the right in said committee to re-delegate to others "**full power to act**" as their "**exclusive representative and agent**" for the purpose of "**assisting them in all labor disputes.**" (Emphasis ours). and where such collective bargaining continues for a considerable period of time, resulting in a failure of agreement, a legitimate trade dispute exists as between the employers and the labor unions, which entitles the labor unions to exert lawful economic pressure against said employer and all members of said trade association acting in concert who are signatory to such a pact.

In our opinion any other conclusion would be tantamount to saying that the employers are free to enter into jural relations with the defendant unions by joining with other employers in a trade association for the purpose of exerting economic pressure by contract and negotiation and then to deny to the members of the defendant union a similar right and when and if the employers were not successful in imposing upon the employees of this group their desires for conditions and terms of employment to be applied to the entire employee group. In other words, one may not freely join in such a course of conduct resulting in contractual relations and accept all the benefits without being willing to sustain some of the natural burdens logically resulting from such relationship.

We are aware that this decision will serve to enlarge upon the concept of a trade dispute as heretofore approved by this court in the case of **Saltzman v Local No. 112, 10 O.O. 6.**

In that case we quoted with approval the definition of trade dispute as set forth by Foran, Judge, in the case of **Park v Hotel & Restaurant Employers International Alliance, 22 O.N.P. (N.S.) 257,** as follows:

"A trade dispute can only exist or arise where there is a stoppage of work of employees or lockout by the employer, and there is an intention or reasonable expectation upon the part of both employees and employer to resume the relation of employer and employee upon the satisfaction of certain specified conditions prescribed or agreed to by one or both of the parties to the dispute."

We believe that this definition is correct insofar as it relates strictly to employer and employee, and where there have not been established any jural or legal relations between an employer and a labor union. We believe it has no application to the facts in the instant case where by their own conduct the employer corporations have established such relationship and have accepted the fruits and benefits thereof and have in concert with other employers assisted in establishing wages, hours and terms and conditions of employment affecting the union employees of other dealer members of the contracting group. We should bear in mind that this is a court of equity, that we should be governed in each case by the facts in each particular case. We must remember that disputes between employers on the one hand and employees on the other hand are essentially economic disputes, and there is "an allowable area of economic conflict" where the courts should not interfere with the peaceful pursuit of such economic pressures as may properly be exerted by either party.

In this case the employer joined with a great number of other employers in bargaining collectively with the union concerning the wages, hours and terms and conditions which should apply to all bargaining members of the group. Organized economic strength was exerted against organized economic strength. By their own voluntary choice, through contract with the trade association, they placed themselves "vis a vis" with the defendant unions in an economic dispute, from the natural consequences of which they now ask this court to extricate them by denying to the defendants the right of peaceful picketing. We do not consider this the province of a court of equity so long as the objectives of the union are lawful and the means employed to secure the same are lawful.

Can we say that the plaintiff employers' situation is different from the situation of other members of the employer group who employed union help, because they were not required by the agreement to do likewise? We think not. We believe that all members of the employer group who gave the trade association exclusive authority to bargain for them by the provisions of Exhibit J, hereinbefore set forth, and who accepted and were willing to accept all the benefits of the relationships thus established are in precisely the same position in the eyes of the law.

Coming now to the question of the contracts which were entered into following this trade dispute, it must be understood that we are considering these contracts only with relation to said trade dispute and the rights and liabilities of the defendant unions in respect thereof. We are not considering the merits of these contracts as they may affect the relations of the plaintiff employers with their own employees " inter sese." It is clear to us that these contracts are terminable by the employer under certain conditions therein described while we are not inclined to look with great favor upon such contracts, entered into after a dispute arises insofar as they affect third parties, nevertheless we believe that until there is a change in the law on this subject, this trial court must respect the decisions of the Appellate Courts on this subject and that therefore, so long as such contractual relations exist, picketing may not be allowed for the purpose of interfering with the contractual relations thus established. This does not, however, in our opinion abridge the right of the unions to picket for the purpose of advertising their dispute to the public, as before stated.

We believe that our conclusions with respect to the right of peaceful picketing are supported by ample authority in Ohio, such as the rationale of the decision of the Supreme Court in the case of LaFrance Co. v Electrical Workers' Union, 108 Oh St 61, and the rationale of the decision of the Court of Appeals of this district in the case of Clark Lunch Co. v Waiters' Union, 22 Oh Ap 265. As before stated there is no case in Ohio having a similar set of facts as are here presented, and we must be guided by reason and logic and the principles of equity in applying the law to the facts in the instant cases.

The court is convinced from the evidence that in the early days of the picketing there was interference with the plaintiffs' customers and employees which is not a right granted under the law allowing peaceful picketing. The members of the

# 430

union have no right, when picketing to interfere with peaceful ingress and egress in and from the places of business of the employer, they may not stop or molest customers entering the place of business of the employers. They may not be guilty of duress or violence, intimida- ▮▮▮▮▮▮ ▮ tion or any interference with the employer, his employees or customers, in the peaceful pursuit by the employer of his business. They may carry signs and picket peacefully adhering always to the truth, in any statements written or oral.

Plaintiffs have argued that defendants have been conducting a secondary boycott which is illegal. With this contention we cannot agree. So far as it may relate to plaintiffs' customers and the public this is a primary boycott which is lawful.

In conclusion the court therefore finds that a legitimate trade dispute exists between the plaintiff employers and defendant auto unions, and that therefore said defendant unions may lawfully carry on peaceful picketing, wherefore the petition for an injunction against all picketing, bannering or patroling is denied. Defendants are restrained from interfering with operation of plaintiffs' business by interfering in any way with peaceful ingress and egress of plaintiffs' customers or the public.

Defendants are restrained from interfering with any contractual relations between plaintiffs and their employees, unless and until the employers avail themselves of the lay-off or discharge provisions of employment contract in which case this order shall not apply in respect to those discharged or laid off.