SAMMONS, etc., v. HOTEL & RESTAURANT EMPLOYEES
UNION et al.

Common Pleas Court, Hamilton County.

No. A-117984.   Decided September 26, 1949.

Charles F. Hartsock, Cincinnati, for plaintiff.
J. W. Brown, Cincinnati, for defendants.

## OPINION

By WEBER, J.

Plaintiff conducts a restaurant under the name of Kern's Motor Lunch, 4027 Eastern Avenue. Plaintiff employs between nineteen and twenty persons. In April, 1949, a representative of the union attempted to negotiate a union contract with the plaintiff. At that time all of the plaintiff's employees were non-union and they were all satisfied with their working conditions. The plaintiff told the union representatives that the employees were free to do as they pleased about joining the union and permitted the union representative to hold a meeting in the plaintiff's place of business for the pur-

pose of presenting the union's views to the employees. None of the employees would join the union. Thereafter, the defendants began to picket in front of the plaintiff's place of business with a banner reading: "Unfair, does not employ union labor." This kind of picketing continued until September 9th.

About August 17th, plaintiff employed Alma Ruth Gibson to work in the kitchen; her duty was to prepare foods and at times to wash dishes. On September 2nd, Mrs. Gibson joined Waitress's Union No. 276. On September 8th, Irwin Katz, a representative of the union again visited the plaintiff and tried to negotiate a union contract but without success. On September 9th, at the request of the union, Mrs. Gibson visited the Union Headquarters and was told to stay away from work because a strike was being called. On September 9th, without further communication with the plaintiff, the defendants changed the sign used in picketing to read: "Please do not patronize this restaurant, strike on." There is no evidence of physical violence, direct interference with customers or any other acts except carrying this sign in front of the plaintiff's place of business.

On September 12th, plaintiff filed a petition for a temporary restraining order and upon final hearing for a permanent injunction.

Excellent briefs have been filed on behalf of both the plaintiff and the defendants.

It is clear that prior to September 9th, there was such a labor dispute as justified, under the freedom of speech provision of the United States Constitution, the picketing with the banner then used; Cafeteria Employee's Union v. Angelos, 320 U. S. 293. But it is claimed that the banner which has been used since September 9th, proclaiming to the public that there is a strike, is unlawful because untrue. The sole question, therefore, is whether there is a strike. The plaintiff claims there is no strike for one or all of three reasons. First, that a cessation of work by a single employee, particularly if that employee is the only member of the union and all the other employees, numbering at least twenty, are satisfied with their working conditions and refuse to join the union. In the case of **Baker, et al. v. Powhatan Mining Company, 146 Oh St 600, 33 O. O. 84**, the court said:

"The universally understood meaning of the term 'strike' is that it is a concerted or general quitting of work by a part or all employees in order to coerce their employer or employers in some way, as when higher wages or shorter working

hours are demanded or reduction of wages is resisted, any general refusal to work as a coercive measure."

In practically all the cases using a similar definition, the question was whether in a strike, that is a cessation of work by employees for the purpose of coercing compliance with their demands, the actions of the employees would be unlawful merely because they were committed by two or more in concerted action rather than by a single individual, that is, because technically such concerted action is a common law conspiracy.

In the case of **Saltzman v. United Retail Employees, 10 O. O. 6, (25 Abs 354)** a Common Pleas Court of Cuyahoga County held that the refusal of one employee to work does not constitute a strike. The same holding was made by the Supreme Court of Oregon in Moreland Theaters Cooperative v. Machine Operators Protective Union; 12 Pac. (2nd) 333. But this court cannot avoid the conclusion that the essence of a strike is the stoppage of work for the purpose of coercing an employer to grant concessions as to working conditions, even though the work stoppage is by one workman only. A cessation of work by the concerted action of a large number may more easily accomplish the object of the work stoppage but there is no fundamental difference in the principle involved or the object sought to be achieved. The basis of the law of conspiracy is that an act done by the concerted action of many may do harm which would not result if the act were done by a single individual. The concerted action of many probably will be more effective than the action of one in achieving the purpose of the work stoppage, but if the act is the same and the purpose to be accomplished is the same there is a strike, whether one or more than one have ceased to work. A chief characteristic of a strike is that the strikers are afforded the right of retaining the status of employees during the work stoppage. Certainly a single individual who stops work temporarily for the sole purpose of coercing a change in his working conditions should not, merely because he is not acting in concert with others, lose his status as an employee, but such would certainly be the result if one worker could not strike.

The second point made by the plaintiff is that the relation of employer and employee must exist in order to have a strike and that no such relation exists between the plaintiff and Mrs. Gibson. The evidence does not sustain this contention. Mrs. Gibson testified that she did not return to work on September 9th and has not gone back to work since because the union called a strike. She also testified that she did not tell the plaintiff she quit work when he asked her on September 11th

whether she was coming back to work; she told him she was not going to wash dishes any more on account of the condition of her hands. Although her answer may seem evasive and ambiguous and may have been unfair to her employer, it well may have been her method of stating to him the nature of her specific complaint. She did not refuse to do all the duties connected with her kitchen job and there is no evidence that she intended to sever completely her relation as an employee.

The third point made by the plaintiff is that a demand directed to the employer on the part of the employee before the cessation of work is a condition precedent to a strike. To sustain this contention the plaintiff's brief makes the following quotation from Page 141 Volume 4 of the Restatement. "It is not a strike if employees temporarily stop working without making a demand upon the employer or use the stoppage as the means of exacting concessions from him even though the stoppage is against his will." This is in the alternative; either a demand must be made against an employer or the stoppage after it occurs must be used to gain concessions from the employer. But even if a demand prior to the stoppage of work is necessary, the uncontradicted testimony in the case is that such a demand was made. In answer to the Court's question and upon cross examination by the plaintiff's counsel, Mr. Katz, the representative of the union, said that on September the 8th, he told the plaintiff that some of his employees were members of the union and that he represented them.

The court holds that there is a strike and that the banner so reading is the truth. The restraining order is denied.